| | | |
|---|---|---|
| CHRISTINA RYAN | * | IN THE |
| P.O. Box 462 | | |
| Hanover, MD 21076 | * | UNITED STATES DISTRICT |
| | | |
| Plaintiff, | * | COURT FOR THE |
| | | |
| v. | * | DISTRICT OF MARYLAND |
| | | |
| ALEJANDRO MAYORKAS, Secretary, | * | |
| Department of Homeland Security, | | |
| Transportation Security Administration | * | |
| | | |
| Serve on: | * | CASE NO. _____ |
| | | |
| Alejandro Mayorkas, Secretary, | * | |
| Department of Homeland Security, | | |
| Washington, D.C. 20528 | | |
| | * | |
| Merrick Garland, US Attorney General | | |
| U.S. Department of Justice | * | |
| 950 Pennsylvania Avenue, NW | | |
| Washington, DC 20530-0001 | * | |
| | | |
| Civil Service Clerk | * | |
| US Attorney's Office, District of Maryland | | |
| 36 South Charles Street, 4th Floor, | * | |
| Baltimore, MD 21201 | | |
| | * | |
| Defendant. | | |
| | * | |

```
*    *    *    *    *    *    *    *    *    *    *    *    *
```

## COMPLAINT

**COMES NOW**, Plaintiff, CHRISTINA RYAN, ("Plaintiff"), by and through her attorney, Paul V. Bennett, Esq., and Bennett Legal Services, Inc., and hereby sues ALEJANDRO MAYORKAS, Secretary, Department of Homeland Security, Transportation Security Administration, (hereinafter "Defendant") and states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as

1

amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634 (hereinafter "ADEA").

2.      That all the actions complained of herein took place at Thurgood Marshal Baltimore-Washington International Airport ("BWI"), located in Linthicum, Maryland.

3.      That at all times relevant hereto, Defendant Transportation Security Administration, ("TSA") (the "Agency") is an agency of the United States Department of Homeland Security ("DHS") that has authority over the security of transportation systems within, and connecting to the United States. Further, Defendant employs five-hundred (500) or more persons, and is an "employer" within the meaning of Title VII and ADEA.

4.      Plaintiff previously filed four EEO claims as follows: EEOC No. 531-2021-00197X (Agency No. HS-TSA-01330-2020); EEOC No. 531-2021-00214X (Agency No. HS-TSA-01562-2020); EEOC No. 531-2022-00010X (Agency No. HS-TSA-00340-2021); and Agency No.  HS-TSA-01314-2023.

5.      In accordance with Title VII, the ADEA and the Code of Federal Regulations ("CFR)", Plaintiff properly exhausted her administrative remedies before timely filing suit. Specifically, on February 10, 2022, Plaintiff submitted an appeal concerning EEOC No. 531-2021-00197X (Agency No. HS-TSA-01330-2020) and has not received a decision on the appeal as of the date of this filing. Further, on November 4, 2022 Plaintiff received a Right to Sue Letter with respect to EEOC No. 531-2022-00010X (Agency No. HS-TSA-00340-2021). In addition, on February 24, 2023, Plaintiff received the Agency's Final Order with respect to EEOC No. 531-2021-00214X (Agency No. HS-TSA-01562-2020). Further, Plaintiff received 14-day Proposed Suspension, Case No. HS-TSA-01314-2023 which has been rescinded.

**FACTS COMMON TO ALL COUNTS**

6.      Plaintiff self-identifies as Caucasian/White and Female. Plaintiff's year of birth is 1960. At all times relevant hereto, Defendant was aware of Plaintiff's race Caucasian/White, sex Female and age YOB: 1960.

7.      Plaintiff has been employed by the Agency since 2004 and has served as a Lead Transportation Security Officer (LTSO), F Band, ATLAS Team, at Baltimore Washington International Airport (BWI), since 2017. Furthermore, from 2014 to the present Plaintiff has been a Behavior Detection Officer, F Band at BWI.

8.      At the time of the alleged events, Plaintiff's first level supervisor was Morris Cobb, during the first 6 months of Transportation Officer Performance System ("TOPS"), African American, Male, YOB: Unknown; subsequently, Plaintiff's first-level supervisor was Detlev Hetzler for the last 6 months of TOPS, White, Non-Hispanic, Male, YOB:1970, ("Hetzler"), Supervisory Transportation Security Officer (STSO); Plaintiff's second-level TSM was Darrin Watson ("Watson"), Caucasian, White, Male, YOB: 1975, Senior Transportation Security Specialist (STSS); Plaintiff's third-level supervisor was Sandra Heredia ("Heredia"), Caucasian/White, Female, over 50 years old, Transportation Security Specialist (TSS); and Plaintiff's fourth-level supervisor was Cynthia Rahmani ("Rahmani"), Caucasian/White, Female, YOB: 1964, Assistant Federal Security Director - Screening ("AFSD-S"). Additionally, Jil Thrash TSI Supervisory Inspector-NRC ("Thrash"); Ronald Juhl AFSD ("Juhl"); Andrea Mishoe FSD former ("Mishoe"); Chris Murgia FSD current ("Murgia"); Grant Goodlett AFSD current, ("Goodlett"); Cinquetta Barfield TSM-I ("Barfield"); John Chandler TSM, ("Chandler"); Giselle Matos TSM-I ("Matos"); Art Jackson TSM, ("Jackson").

9.      At all times relevant herein, Plaintiff met and/or exceeded Defendant's legitimate

3

job expectations.

10.     Plaintiff has filed multiple EEO complaints during the time period of 2007 to 2023.

11.     Plaintiff alleges that Hetzler and Watson were briefed by the Agency officials when they were hired in 2014 of Plaintiff's prior EEO complaints. Plaintiff further alleges that the other management officials above-referenced have also knowledge of Plaintiff's EEO complaints.

12.     Plaintiff is a member of a protected class.

13.     Plaintiff's employment situation is comparable to other employees not of the same protected class.

14.     Plaintiff alleges that she has been treated differently than other employees with respect to terms, conditions or benefits of employment.

15.     Plaintiff alleges that she has been subjected to an on-going discrimination and harassment (non-sexual) on the basis of race Caucasian/White, sex Female, age YOB: 1960, and reprisal through the occurrence of multiple events since starting in or around 2007 and the most recent events in 2023.

16.     On May 13, 2019, Plaintiff met with Rahmani at BWI, in Rahmani's office to discuss Plaintiff's 2019 Transportation Officer Performance System (TOPS) scores. Watson attended part of the meeting. On information and belief, Plaintiff alleges that during said meeting, Rahmani yelled at Plaintiff and was extremely disrespectful towards Plaintiff. Plaintiff alleges that Rahmani yelled at Plaintiff for prior issue with employee by the name of William Gilbert. During this meeting Rahmani stated, "you can walk up and down checkpoint and find anyone doing something wrong".  Plaintiff felt this was a threat to her job. Plaintiff further alleges that Rahmani's behavior towards Plaintiff constituted a form of harassment, was based on Plaintiff's race Caucasian/White, sex Female, age: YOB: 1960 and in retaliation for Plaintiff's EEO activity.

4

17.     On information and belief, Plaintiff alleges that in December 2019, Plaintiff had a conversation with Hetzler related to government closures due to the December 2018 to January 2019 government shutdowns. Plaintiff alleges that Hetzler stated he did not have to worry about the federal court system because he did not have a case in federal court. Plaintiff strongly believed Hetzler's statement was in reference to an active federal case Plaintiff had pending in federal court. Plaintiff reasonably perceived Hetzler's statement as a threat since Plaintiff did have an active federal court case. Plaintiff alleges that her sex, age, and prior EEO activity were factors in this instance because Plaintiff was on a team that consisted of an all-male "clique" group, she was over 40 years of age, and she had been retaliated against for filing her prior EEO complaints.

18.     On information and belief Plaintiff alleges that Hetzler and Kenneth Steburg, ("Steburg") Caucasian/White, Male, over 40 years old, Expert Transportation Security Officer (ETSO) discussed the subject of alcohol during work hours on January 26, 2020. Plaintiff alleges that she briefed her team, which included Hetzler and Steburg that the subject of alcohol could not be discussed at work. Plaintiff alleges that she reported Hetzler's and Steburg's conversation to Watson, and Watson responded, "Ted was just joking." Plaintiff alleges that several days later Hetzler asked Plaintiff in a malicious tone if she was trying to get Hetzler in trouble with Watson. Plaintiff believes that, as a form of retaliation for reporting him, Hetzler joked with a fellow employee during work hours, and in front of Plaintiff by asking if a certain individual at BWI had alcohol in his iced tea. Plaintiff alleges that Hetzler made several statements to her about alcohol that were unwelcome and/or unwanted which constituted a form of harassment and created a hostile work environment for Plaintiff. Plaintiff alleges that Hetzler forced Plaintiff into the lunchroom at Pier C and made her smell hand sanitizer, which Hetzler stated smelled like alcohol

and he wanted Plaintiff to smell it. Plaintiff further alleges that Hetzler subjected her to the on-going harassment due to her race White, sex Female, age YOB: 1960, and EEO activities.

19.    On information and belief Plaintiff alleges that on February 2, 2020, Steburg spoke loudly about Bourbon made in another state and used the word pedophile three times. Plaintiff contends that Robert Gaskins, ("Gaskins"), Black, Male, YOB: 1958, ETSO, E-Band, BWI Airport, laughed when Steburg made the alleged comments. Plaintiff alleges that the comments were inappropriate as the word pedophile was a form of a sex act. Plaintiff reported the incident to Watson, who stated that he would address the matter in a briefing. Plaintiff alleges that the statements by Steburg were unwelcome and/or unwanted, constituted a form of harassment and created a hostile work environment for Plaintiff.

20.    On information and belief, Plaintiff alleges that on February 4, 2020, Steburg gave pat-down instructions contrary to Standard Operating Procedure (SOP). Plaintiff alleges that Steburg stated to a male employee during a pat-down procedure "we are going to get friendly now," and when the pat-down was completed Steburg stated to the employee "now you have had your airport massage." Plaintiff contends that Steburg's alleged statements were not in the SOP; therefore, Steburg should not have made the comments. Plaintiff alleges that Kiran Annavarpu ("Annavarpu") Asian Indian, Brown, Male, YOB: 1970, ETSO, G-Band, BWI Airport, heard Steburg make the inappropriate remarks. Plaintiff alleges that the statements by Steburg were unwelcome and/or unwanted, constituted a form of harassment and created a hostile work environment for Plaintiff.

21.    On February 17, 2020, a management official singled out and humiliated Plaintiff when he directed her to leave a briefing. Plaintiff alleges that after a briefing on February 17, 2020, Hetzler stated in an authoritative voice "briefing over." Plaintiff alleges that neither she, Steburg,

Gaskins, nor Pamela Melton ("Melton"), African American, Female, YOB: 1992, left the meeting, and Hetzler stated again "briefing over." Plaintiff assumed the statement was directed towards her, and she left the briefing. Plaintiff alleges that the other staff members remained in the room. Plaintiff believes that Melton was treated more favorably in this instance since she was not asked to leave the briefing.

22.    On February 18, 2020, Hetzler asked Plaintiff if she had a hearing problem and asked her nonsensical questions. Specifically, Hetzler asked Plaintiff if there had been any distractions at the meetings for Plaintiff.  Plaintiff believes Hetzler made such unwelcome comments due to her age, over 40 years of age, and as form of bullying. Plaintiff further alleges that Hetzler's comments constituted harassment and created a hostile work environment for Plaintiff.

23.    On February 19, 2020, Hetzler made reference to Plaintiff's age in a sarcastic manner. Specifically, Plaintiff alleges that Hetzler talked about the Agency's new salary progression during a meeting on February 19, 2020. Plaintiff alleges that when Hetzler began to discuss salary progression in terms of age and years on the job, he looked directly at Plaintiff and made a comment about 60 years of age. Plaintiff perceived the comment as sarcastic because Hetzler looked directly at her when the comment was made, although there were other people present at the meeting. Plaintiff alleges that the comments by Hetzler were humiliating, unwelcome and/or unwanted, constituted a form of harassment and created a hostile work environment for Plaintiff.

24.    On March 4, 2020, Plaintiff requested to meet privately with Hetzler and Watson in the lobby of BWI, near the Terminal C exit lane and asked that Hetzler and Watson not assign her to work with Brooke Hall ("Hall") African American, under 40 years old, Transportation Security Officer (TSO) due to an interaction between she and Hall on February 25, 2020. Specifically,

Plaintiff tapped Hall's shoulder because Plaintiff thought that Hall was upset. Plaintiff had seen Hall upset many times before. However, during the meeting with Watson and Hetzler, Watson and Hetzler told Plaintiff that nothing wrong happened between Hall and Plaintiff on February 25, 2020. In addition, on March 10, 2020, Plaintiff emailed Ronald Juhl ("Juhl"), White, Caucasian, Male YOB: 1955, Deputy Federal Security Director ("DFSD") at BWI, and requested not to be assigned to work with Hall. Also, in the same email, Plaintiff reported Hall, Annavarapu, Steburg because they were not completing ATLAS assignment at Gate C. Plaintiff was working the Gate C by herself while Hall, Steburg, Annavarapu were chewing gum, sitting Indian style in the passenger seats and on their phone. This was misconduct that the three received no disciplinary action for. Despite Plaintiff's requests, Plaintiff's supervisors did not take any action and Plaintiff had to work with Hall. Plaintiff alleges that Hetzler's, Watson's and Juhl's lack of action regarding her requests was based on Plaintiff's race White, sex Female and age YOB: 1960, and in retaliation for Plaintiff's participation in prior EEO's cases.

25. On March 8, 2020, Plaintiff met privately with Hetzler and Rahmani, in the BWI Coordination Center. Hetzler read and presented her a Letter of Reprimand ("03/08/2020 LOR") regarding an interaction between the Plaintiff and Hall on February 25, 2020. The 03/08/2020 LOR claimed that Plaintiff interrupted a conversation between Hall and an AKAL (employee's name abbreviation unknown), and repeatedly "jabbed" Hall's arm. The 03/08/2020 LOR further indicated that a copy of the document would be placed in Plaintiff's electronic Official Personnel Folder for two years and that Plaintiff had the right to grieve the 03/08/2020 LOR. Plaintiff alleges that prior to the March 8, 2020, meeting she had received no notice of the 03/08/2020 LOR, was not asked to provide a statement about the events of February 25, 2020, and was not permitted to review CCTV footage before the LOR was issued of the incident at issue. Plaintiff alleges that

8

Conduct Based Discipline 5 CFR 752, states that in addressing employee conduct, management must show that the accused employee's account of events was considered prior to a final conduct decision. In addition, on information and belief, Plaintiff alleges that the 03/08/2020 LOR referenced a letter of reprimand Plaintiff received on January 29, 2015 which was 5 years old, and per the TSA Handbook to Management Directive No. 1100.75-3, this prior letter of reprimand should not have been referenced in the 03/08/2020 LOR. Plaintiff alleges that her supervisors did not allow her to provide her account of the events in retaliation for Plaintiff's participation in prior EEO's cases and due to her race Caucasian/White, sex Female and age YOB:1960. On information and belief, Plaintiff alleges that the Department of Homeland Security's Anti-Harassment Unit has a strict policy on reporting any touching incident within 72 hours.  Rahmani, Watson and Hetzler did not report the jabbed incident after the February 25, 2020 incident or after the 03/08/2020 LOR was issued.  Plaintiff alleges that another employee by the name of Sam Meekins TSM was fired for not reporting a touching incident within 72 hours.  Plaintiff called Emily Braxton ("Braxton") at Anti-Harassment, two times in May 2020 and October 2020 and was informed that no staff member reported the jabbed that Plaintiff was accused of in 03/8/2020 LOR.  Braxton informed Plaintiff that she did everything a federal employee was supposed to do; and stated, she didn't understand why Plaintiff received an LOR. Hall never asked not to work with Plaintiff. LOR should be distributed if there are repeat offenses of touching only.  This was a one-time tapped on the shoulder that was referenced as jabbed. Rahmani herself stated "no touching" after the LOR was read.  Rahmani walks around checkpoint hugging TSO's.  This is evidence that Rahmani doesn't follow the no-touching policy. Further, Rahmani, Watson, Hetzler did not follow DHS policy to report this touching of jabbed.  Additionally, Plaintiff specifically requested of Hetzler to stop the knuckle crunches verbally over a one-year period.  Hetzler never stopped.  Hetzler

9

pushed elbow crunches and shoulder crunches on Plaintiff even when Plaintiff said no. Hetzler stated, "you don't want to do knuckle crunches with me because I have fat knuckles". Plaintiff was afraid to report because she would receive retaliation.

26.    Furthermore, on March 8, 2020 was Plaintiff's birthday. Hetzler and Rahmani gave the LOR to Plaintiff intentionally on Plaintiff's birthday to create a hostile work environment for Plaintiff and harass Plaintiff on her birthday.

27.    On information and belief, Plaintiff alleges that on March 9, 2020, management denied Plaintiff's request to change her fiscal year 2019, Transportation Officer Performance System (TOPS) ratings, identified her as a "he" on her fiscal year 2019 TOPS, refused to remove an expunged Maryland Aviation Authority MAA record from her fiscal year 2019 TOPS and repeatedly had the wrong name on her fiscal year 2019 TOPS. Plaintiff alleges that management's denial was based on her race White, sex Female and age YOB:1960 and in retaliation for Plaintiff's participation in prior EEO's cases.

28.    On April 28, 2020, (the "April 28, 2020 incident") Jill Thrash ("Thrash"), Caucasian, White, Female, over 40 years old, Supervisory Transportation Security Inspector, (STSI), approached Plaintiff at her work station at the Lower-Level A checked baggage passenger area. Brad McConnell ("McConnell"), Caucasian/white, Male, over 20 years old, Transportation Security Inspector (TSI), accompanied Thrash. Thrash informed Plaintiff that she wanted to discuss Plaintiff's personnel and disciplinary records with Plaintiff. Plaintiff refused to discuss her personnel and disciplinary records in a public area and told Thrash that Thrash was required to make an appointment with Plaintiff pursuant to the COVID-19 policies. Thrash then twice asked Francis Hamilton ("Hamilton"), African American/brown, Male, over 30 years old, Transportation Security Officer, ("TSO"), and Gloria Ottaway ("Ottaway) Caucasian/White, Female, over 50

years old, Transportation Security Officer, if she could pull Plaintiff away to discuss her records. Hamilton and Ottaway responded that they were unsure and that Thrash needed to ask Plaintiff. Thereafter, Thrash asked Plaintiff to sign her National Resolution Center (NRC) Designated Grievance Official (DGO) document. Plaintiff responded that she was not required to sign NRC final decision pursuant to the agency policies. Plaintiff refused to sign the document. Plaintiff believes that Thrash treated Plaintiff like she was "white trash" and a "Kindergarten child" by requiring Plaintiff to meet with her in public without an appointment, and by disregarding Plaintiff's role as LTSO by asking Ottaway and Hamilton if she could meet with Plaintiff. Therefore, Plaintiff submitted a written complaint about the April 28, 2020 incident to Watson. Thrash stated in her statement that McConnell was present to witness the signing of the NRC decision.  Thrash knew that Plaintiff did not need to nor was obligated to sign the NRC decision. Thrash knew she didn't need a witness. Plaintiff believes Thrash brought McConnell intentionally to make an issue and he would write a statement according to Thrash against Plaintiff. Plaintiff doesn't know whether Thrash and McConnell were dating. Plaintiff alleges that Thrash's actions were unwelcomed, harassing, discriminating, contributed to a hostile work environment and affected Plaintiff's performance at work because Watson's actions made Plaintiff feel humiliated, embarrassed and targeted.

29.     In May 2020 TSO Swartz complained to Plaintiff that she didn't want to work with Hetzler that she was uncomfortable with him.  On May 30, 2020 Plaintiff sent Watson an email on this issue.

30.     On June 1, 2020 Watson issued the Plaintiff a proposed five-day suspension for the April 28, 2020 incident. Further, on June 1, 2020, Watson gave Plaintiff a hard copy of McConnell's statement about the April 28, 2020 incident, when Plaintiff discussed her proposed

five-day suspension with Watson. McConnell wrote in his statement certain information in connection with another incident relating to Plaintiff's employment which had occurred on March 8, 2020, a LOR. McConnell wrote in his statement "LOR". Plaintiff believes that Thrash disclosed to McConnell information about Plaintiff's March 8, 2020 LOR formal discipline-related issue. Plaintiff alleges that Thrash, McConnell, and Watson's actions were unwelcomed, harassing, discriminating, contributed to a hostile work environment and affected Plaintiff's performance at work because Thrash, McConnell and Watson's actions made Plaintiff feel humiliated, embarrassed and targeted.

31.     On June 10, 2020, Hetzler told Plaintiff and other employees that he had quick personnel issue to discuss with Plaintiff. In addition, on August 10, 2020, Hetzler announced that he planned to meet with Plaintiff in the Coordination Center in the presence of Ottaway and Steburg. Plaintiff alleges that Hetzler's actions were harassing with the intent to humiliate Plaintiff in front of the other employees. Plaintiff further alleges that Hetzler's actions created a hostile work environment for Plaintiff.

32.     On June 9, 2020, Heredia agreed via email to meet with Plaintiff on June 23, 2020, to discuss Plaintiff's proposed five-day suspension. Nonetheless, when Plaintiff went to Heredia's office on June 23, 2020, Heredia told Plaintiff that she was not prepared for the meeting, slammed her feet into the floor as she walked in and out of her office to retrieve documents, flopped herself into her chair when she returned to her office. Due to Heredia's inappropriate behavior, Plaintiff requested to cancel the meeting. Heredia agreed to reschedule the meeting. Nonetheless, the meeting was not rescheduled. Instead, Heredia called Plaintiff later on same day and pulled Plaintiff off her work assignment on the ATLAS Team. An alarm was going off in the airport and Plaintiff could not hear Heredia on the phone. Plaintiff explained to Heredia she was working and

didn't have a replacement to continue her call with Heredia.  Heredia ignored Plaintiff and continued talking.  Heredia ignored Plaintiff when she stated an alarm was going off and she couldn't hear her.  Plaintiff never received a quality discussion which Plaintiff was allowed to have (per TSA policies) over the five-day suspension. Further, on information and belief, Plaintiff alleges that per the OPM Rules/TSA MGT Directives, employees are supposed to have three letters of reprimand before employees get a suspension for the same misconduct. Nonetheless, Plaintiff had received one letter of reprimand only before she received the suspension. Plaintiff alleges that Heredia's actions created a hostile work environment for Plaintiff.

33.     On June 29, 2020 Hetzler went to do a shoulder crunch with TSO Swartz and purposely fell into Swartz while she was sitting in a chair.  Plaintiff witnessed this.  This was after TSO Swartz in May of 2020 complained that she didn't want to be around Hetzler or work with him. Watson did nothing after Plaintiff reported this.  Watson retaliated against Plaintiff with the 8-10-2020 5-day suspension for her reporting what Swartz stated.   Plaintiff was afraid to report the June 29, 2020 incident for fear of more retaliation.  Plaintiff alleges that Hetzler has been allowed to touch others but gives LORs to Plaintiff.

34.     On August 10, 2020, Plaintiff met with Heredia in her office and Heredia gave her a physical copy of her notice of five-day suspension. The notice indicated that Plaintiff was suspended from August 14, 2020 to August 18, 2020, and that Plaintiff would receive no compensation for these days.

35.     On September 21, 2020, Hetzler and Watson issued Plaintiff and ATLAS Team the wrong assignment. Specifically, Hetzler gave Plaintiff and LTSO Lewis documentation and a picture of Selectee Notification Report (SNR) passenger that they were supposed to interview and screen; however, Plaintiff and Lewis could not screen the SNR passenger because Hetzler gave

13

them the wrong documentation and incorrect picture. Plaintiff alleges that Hetzler's and Watson's actions contributed to a hostile work environment and affected Plaintiff's work performance.

36.    On information and belief Plaintiff contends that on February 23, 2023, Plaintiff received an unwarranted proposed 14-day suspension which was issued by John Chandler, Transportation Security Manager (TSM) and which has been rescinded. In the suspension letter, Plaintiff's prior discipline record that had been dismissed was referenced in violation of the TSA rules. Plaintiff contends that this prior discipline record was included in the proposed 14-day suspension in retaliation for Plaintiff's EEO activities.

**COUNT I**
**AGE DISCRIMINATION**
**(Disparate Treatment)**
**Age Discrimination in Employment Act of 1967, as amended,**
**29 U.S.C. § 621, *et seq.***

37.    Plaintiff hereby restates and incorporates paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38.    Plaintiff is in the protected age group (over 40 years of age).

39.    Plaintiff is/was highly qualified for the position of Lead Transportation Security Officer ("LTSO") for which she serves/served under the employ by the Defendant.

40.    Plaintiff was subjected to adverse treatment, including without limitation, the above-referenced disparate treatment and adverse job actions, including but not limited unwarranted letters of reprimand, unjustified suspensions, and undue criticism.

41.    Plaintiff's age was the "but-for factor" behind the described adverse treatment. Plaintiff alleges that the actions stated in the previous paragraphs were done by Plaintiff's superiors with the intention to force Plaintiff into early retirement. Plaintiff believes that her superiors are attempting to force her into early retirement due to her age YOB: 1960.

14

42.     Plaintiff alleges that younger employees are treated more favorably at her workplace, such as Kenneth Steburg, Caucasian/White, Male, over 40 years old, Expert Transportation Security Officer (ETSO); Kiran Annavarpu, Asian Indian, Brown, Male, YOB: 1970, ETSO, G-Band, BWI Airport; Pamela Melton, African American, Female and under the age of 40 years old; Brad McConnell, Caucasian/white, Male, over 20 years old, Transportation Security Inspector (TSI), among others.

43.     That the intentional discriminatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

44.     As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost wages and emotional distress, and incurred attorneys' fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT II**
**RACE DISCRIMINATION**
**(Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964**
**42  U.S.C. § 2000e,** *et seq.*

45.     Plaintiff hereby restates and incorporates paragraphs 1 through 44 of this Complaint as though fully set forth herein.

46.     Plaintiff is a member of a protected class, Caucasian White, throughout the time of the subject discriminatory acts.

47.     Plaintiff was qualified and satisfactorily performing her duties under the employ by the Defendant.

48.     Plaintiff alleges that the above-referenced actions by Defendant are related to her race and color because some of Plaintiff's superiors and co-workers are African-Americans who

have clearly expressed their desire to get Plaintiff in trouble, such as Andrea Mishoe, FSD, African American and Head of Transportation Security Administration (TSA) at BWI, and Brooke Hall, African American, co-worker, Lead Transportation Security Officer (LTSO) at BWI.

49.    That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.

50.    That the effect of the practices complained of above deprived Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race.

51.    That similarly situated non-Caucasian/white employees outside of the protected class, such as Brooke Hall, African American, LTSO at BWI; Kiran Annavarpu, Asian Indian, ETSO, G-Band, at BWI Airport; Robert Gaskins, Black, ETSO, E-Band at BWI, among others, were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, being given unwarranted discipline and held to a higher standard in the job performance. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer loss of earning capacity, severe emotional distress, humiliation, mental anguish, and incur attorney's fees and litigation costs.

52.    That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT III**
**SEX DISCRIMINATION**
**(Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e,** *et seq.*

53.    Plaintiff hereby restates and incorporates paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.    Plaintiff is a member of a protected class, female, throughout the time of the subject discriminatory acts.

55.    Plaintiff was qualified and satisfactorily performing her duties under the employ by the Defendant.

56.    Plaintiff alleges that the above-referenced discriminatory actions were taken because of her Sex, Female.

57.    That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.

58.    That the effect of the practices complained of above deprived Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

59.    That similarly situated male employees such as Robert Gaskins ETSO, E-Band; Kenny Steburg ETSO; Kiran Annavarapu, ETSO, G-Band; Detlev Hetzler STSO; Morris Cobb STSO at BWI; Darrin Watson, TSSE-TSM, I-Band, BWI; Thomas Stein, LTSO, were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, being given unwarranted discipline and held to a higher standard in the job performance. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer loss of earning capacity, severe emotional distress, humiliation,

17

mental anguish, and incur attorney's fees and litigation costs.

60.      That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

**COUNT IV**
**RETALIATION**
**(Adverse Actions and Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964**
**(Prior EEO Activities)**
**42 U.S.C. § 2000e, et. Seq.**

61.      Plaintiff hereby restates and incorporates paragraphs 1 through 60 of this Complaint as though fully set forth herein.

62.      Plaintiff's protected activities have been numerous, processed and investigated over the course of the years, since in or around 2007. Plaintiff has filed multiple EEOC charges against the Defendant since 2007, including but not limited to: EEOC No. 531-2021-00197X (Agency No. HS-TSA-01330-2020); EEOC No. 531-2021-00214X (Agency No. HS-TSA-01562-2020); EEOC No. 531-2022-00010X (Agency No. HS-TSA-00340-2021), and Agency No. HS-TSA-01314-2023.

63.      The subsequent adverse employment actions, as set forth in the above-referenced facts common to all counts, amounted to illegal retaliation. Specifically, Plaintiff's first level supervisor Morris Cobb (for the first 6 months of TOPS) African American, Male, unknown age; Plaintiff's first-level supervisor Hetzler, White, Non-Hispanic, Male, YOB:1970, Supervisory Transportation Security Officer (STSO), Plaintiff's second-level TSM Watson, Caucasian, White, Male, YOB: 1975, Senior Transportation Security Specialist (STSS), Plaintiff's third-level supervisor Heredia, Caucasian/White, Female, over 50 years old, Transportation Security Specialist (TSS); and Plaintiff's fourth-level supervisor Rahmani,

Caucasian/White, Female, YOB: 1964, Assistant Federal Security Director - Screening ("AFSD-S"); have subjected Plaintiff to severe criticism, unprofessional treatment, humiliation, and unwarranted disciplinary actions, due to Plaintiff's EEO complaints.

64.     The aforementioned legally protected activities were known by upper management to have occurred.

65.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon his legally protected activities.

66.     That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

67.     As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT V**
**HOSTILE WORK ENVIRONMENT BASED ON HARASSMENT, DISCRIMINATION AND RETALIATION**
**(Adverse Actions and Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964**
**(Age, Race, Sex, and Prior EEO Activities)**
**42 U.S.C. § 2000e, et. Seq.**

68.     Plaintiff hereby restates and incorporates paragraphs 1 through 67 of this Complaint as though fully set forth herein.

69.     Defendant created a hostile work environment based on harassment, age, race, sex discrimination, and prior EEO activities in violation of Title VII of the Civil Rights Act of 1964. Specifically, Plaintiff's first-level supervisor Cobb, African American, Male, YOB: unknown (during first 6 months of TOPS); Plaintiff's first-level supervisor Hetzler, White, Non-

Hispanic, Male, YOB:1970, Supervisory Transportation Security Officer (STSO) (during the last 6 months of TOPS); Plaintiff's second-level TSM Watson, Caucasian, White, Male, YOB: 1975, Senior Transportation Security Specialist (STSS); Plaintiff's third-level supervisor Heredia, Caucasian/White, Female, over 50 years old, Transportation Security Specialist (TSS); Plaintiff's fourth-level supervisor Rahmani, Caucasian/White, Female, YOB: 1964, Assistant Federal Security Director - Screening ("AFSD-S"); Ronald Juhl AFSD former, Andrea Mishoe former FSD, Chris Murgia FSD current, Grant Goodlett AFSD current, John Chandler TSM, Giselle Matos TSM I Band, Cinquetta Barfield TSM I Band, Art Jackson TSM; by subjecting Plaintiff to severe criticism, unprofessional treatment, humiliation, and unwarranted disciplinary actions, have created a pervasive hostile work environment for Plaintiff.

70.     Defendant's violations of Title VII of the Civil Rights Act of 1964 were continuing, pervasive and humiliating.

71.     As a direct and proximate result of the hostile work environment created by Defendant, Plaintiff has suffered lost wages, severe emotional distress, and incurred attorneys' fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**<u>PRAYER FOR DAMAGES</u>**

WHEREFORE, for the foregoing reasons, Plaintiff, demands judgment against Defendant, as follows:

a.  Clean Personnel file of Plaintiff;

b.  $300,000.00 as compensatory damages;

c.  Non-compensatory damages as deemed as appropriate by this honorable Court;

d.  Prejudgment and post judgment interest;

20

e.  Award attorney's fees and costs, including expert witness fees, as allowed by law;

f.  And for such other and further relief as this Honorable Court deems just and equitable.

g.  Admission in writing of Retaliation for EEO CASE #HS-TSA-001314-2023, and other cases herein.

h.  Clean TOPS 2019 record of "HE" and expunged MAA record.

Respectfully submitted,

_____
Paul V. Bennett, Esq. (Bar No. 10324)
Bennett Legal Services, Inc.
5457 Twin Knolls Road, Suite 300
Columbia, Maryland 21045
(410) 353-4994
pbennett@bennettlaw.net
*Attorneys for Plaintiff*

**DEMAND FOR JURY TRIAL**

CHRISTINA RYAN, Plaintiff, hereby demands that this matter be tried by jury.

_____
Paul V. Bennett, Esq.