**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CHRISTINA RYAN, | ) |
| | ) |
| Plaintiff, | )      Civil Action No. 23-cv-01364-LKG |
| | ) |
| v. | )      Dated:  July 12, 2024 |
| | ) |
| ALEJANDRO MAYORKAS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>**MEMORANDUM OPINION**</u>

## I.    INTRODUCTION

In this employment discrimination matter, Plaintiff, Christina Ryan, asserts disparate treatment discrimination and retaliation claims, arising from her employment with the Transportation Security Administration ("TSA"), against Defendant, Alejandro Mayorkas in his official capacity as the Secretary of the Department of Homeland Security ("DHS"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621-634.  ECF No. 16. Defendant has moved to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 23.  This motion is fully briefed.  ECF Nos. 16, 23-1, 26-1, 27.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Defendant's motion to dismiss; (2) **DISMISSES** Counts I, II, III and V of the amended complaint; and (3) **DISMISSES** Count IV of the amended complaint, with the exception of Plaintiff's retaliation claim based upon her August 10, 2020, suspension.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this employment discrimination matter, Plaintiff asserts disparate treatment discrimination and retaliation claims arising from her employment with the TSA against DHS Secretary Alejandro Mayorkas, pursuant to Title VII and the ADEA.  ECF No. 16.  Specifically, Plaintiff asserts the following claims in the amended complaint: (1) ADEA-age discrimination/disparate treatment (Count I); (2) Title VII-race discrimination/disparate treatment (Count II); (3) Title VII-sex discrimination/disparate treatment (Count III); (4) Title VII-retaliation (Count IV); and (5) Title VII-hostile work environment (Count V).  *Id*. at ¶¶ 37-71.  As relief, Plaintiff seeks to recover monetary damages from Defendant and attorney's fees and costs.  *Id*. at Prayer for Relief.

The Parties

Plaintiff Christina Ryan self-identifies as Caucasian/White and Female.  *Id*. at ¶ 6.  Plaintiff is currently employed by TSA as a Lead Transportation Security Officer ("LTSO") at the Baltimore Washington International Airport, located in Linthicum, Maryland.  *Id*. at ¶ 7.

Defendant Alejandro Mayorkas is the Secretary of DHS.  *Id*. at ¶ 1.  The TSA is an agency of the DHS that has authority over the security and transportation systems within, and connecting to, the United States.  *Id*. at ¶ 3.

The Plaintiff's Employment History

Plaintiff began working for TSA in 2004.  *Id*. at ¶ 7.  Since 2017, Plaintiff has served as a Lead Transportation Security Officer, F Band, ATLAS Team for TSA at the Baltimore Washington International Airport.  *Id*.  Plaintiff has also held the position of Behavior Detection Officer for TSA since 2014.  *Id*.

Plaintiff has had several supervisors during her tenure with the TSA, as shown in the chart below:

| Name | Race | Sex | Year of Birth | Supervisory Level |
|------|------|-----|---------------|-------------------|
| Morris Cobb | African American | Male | Unknown | First |

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint; Defendant's motion to dismiss and the memorandum in support thereof.  ECF Nos. 16, 23-1, 26-1.

| Darrin Watson | White | Male | 1975 | First |
| Detlev Hetzler | White | Male | 1970 | Second |
| Sandra Heredia | White | Female | Over 50 years old | Third |
| Cynthia Rahmani | White | Female | 1964 | Fourth |

*See* ECF No. 23-1 at 4.  Plaintiff alleges that several of her supervisors have taken adverse employment actions against her and treated her disparately upon the basis of age, race, color and/or sex, during her tenure at TSA.  *Id*. at ¶ 8.

<u>The Alleged Incidents Of Discrimination And Retaliation</u>

In the amended complaint, Plaintiff alleges that she has been subjected to "on-going discrimination and harassment (non-sexual), on the basis of race Caucasian/White, sex Female, age YOB: 1960, and reprisal," while she has been employed by TSA.[2]  *Id*. at ¶ 15.  In this regard, Plaintiff alleges that her supervisors discriminated and retaliated against her on several occasions from May 2019 to July 23, 2023.  ECF No. 16.

Specifically, Plaintiff alleges that, on May 13, 2019, her fourth level supervisor, Cynthia Rahmani, yelled at her during a meeting and was "extremely disrespectful toward" her and that Plaintiff felt "a threat to her job."  *Id*. at ¶ 16.  Plaintiff also alleges that, in December 2019, she had a conversation with her second level supervisor, Detlev Hetzler, regarding a possible government shutdown and that she "strongly believed" that Mr. Hetzler made a comment to her that made reference to "an active federal case" that she had pending.  *Id*. at ¶ 17.

Plaintiff alleges that she continued to be subjected to discriminatory and retaliatory conduct at the workplace in early 2020.  In this regard, Plaintiff alleges that, on January 26, 2020, Mr. Hetzler and another TSA employee, Kenneth Steburg, discussed the subject of alcohol in her presence during work hours.  *Id*. at ¶ 18.  Plaintiff also alleges that, on February 2, 2020, Mr. Steburg unwelcomingly "spoke loudly about Bourbon" and "used the word

---

[2] Plaintiff generally alleges that she has filed multiple EEOC charges against the Defendant since 2007, including the following matters:  EEOC No. 531-2021-00197X (Agency No. HS-TSA-01330-2020); EEOC No. 531-2021-00214X (Agency No. HS-TSA01562-2020); EEOC No. 531-2022-000lOX (Agency No. HS-TSA-00340-2021), and Agency No. HS-TSA-013142023.  ECF No. 16 at ¶ 62.

pedophile three times" in her presence.  *Id*. at ¶ 19.

  Plaintiff further alleges that, on February 4, 2020, Mr. Steburg gave "pat down instructions contrary to the [TSA's] Standard Operating Procedure," by stating to a male employee during the pat down that "we are going to get friendly now," and later stating to the employee "now you have had your airport massage."  *Id*. at ¶ 20.  In addition, Plaintiff alleges that Mr. Hetzler "singled out and humiliated [her]," by directing her to leave while allowing other employees to remain in the room, during a meeting held on February 17, 2020.  *Id*. at ¶ 21.  Plaintiff alleges that, thereafter, Mr. Hetzler "made reference to [her] age in a sarcastic manner," by looking directly at Plaintiff while making a comment about "60 years of age," on February 19, 2020.  *Id*. at ¶ 23.

  Plaintiff also contends that she continued to experience discriminatory and retaliatory conduct at the workplace during the spring and summer of 2020, as demonstrated by the following alleged incidents:

- On March 4, 2020, TSA denied Plaintiff's request not to be assigned to work with Brooke Hall, another TSA employee, and TSA management declined to discipline two other TSA employees for failing to complete their work assignments, while Plaintiff worked alone at her post.  *Id*. at ¶ 24.

- On March 8, 2020, Plaintiff received a letter of reprimand, regarding an incident where she was alleged to have "jabbed" Brooke Hall.  *Id*. at ¶ 25.

- On March 9, 2020, TSA management denied Plaintiff's request to correct her fiscal year 2019 TOPS performance rating and TSA management refused to remove an expunged Maryland Aviation Authority record in Plaintiff's file.  *Id*. at ¶ 27.

- On April 28, 2020, Plaintiff's supervisor, Jill Thrash (White/Caucasian, female, over 40 years old), and Brad McConnell (Caucasian/White, male, under age 40), approached Plaintiff while working to discuss personnel and disciplinary issues.  *Id*. at ¶ 28.  Plaintiff alleges that after she "refused to discuss her personnel and disciplinary records in a public area," Ms. Thrash asked Plaintiff to sign a National Resolution Center Designated Grievance Official Document, which she refused to do.  *Id*.

- On June 1, 2020, Plaintiff's first level supervisor, Darrin Watson, issued her a proposed five-day suspension related to the April 28, 2020, incident involving Ms. Thrash.  *Id*. at ¶ 30.

- On June 10, 2020, Plaintiff's second level supervisor, Detlev Hetzler stated in front of other employees that he had a "quick personnel issue to discuss with" Plaintiff.  *Id*. at ¶ 31.

- On June 23, 2020, Plaintiff went to the office of her third level supervisor, Sandra Heredia, to discuss her proposed suspension, but Ms. Heredia told Plaintiff that she was

not prepared for the meeting, and "slammed her feet into the floor as she walked in and out of her office to retrieve documents, flopped herself into her chair when she returned to the office." *Id*. at ¶ 32.

- On June 29, 2020, Plaintiff witnessed Mr. Hetzler "do a shoulder crunch" with another TSA employee, Ms. Swartz, and fall onto her. *Id*. at ¶ 33.

- On August 10, 2020, Plaintiff received a notice of a five-day suspension. *Id*. at ¶ 34.

Lastly, Plaintiff alleges that that she received a 14-day suspension on February 23, 2023, which was later rescinded by TSA on March 6, 2023. *Id*. at ¶ 36.

### The Plaintiff's Allegations

Plaintiff alleges that the aforementioned conduct shows that she was subjected to adverse treatment, disparate treatment and adverse employment actions during her employment with TSA. *Id*. at ¶ 40. In this regard, Plaintiff contends that she has been discriminated and retaliated against upon the basis of her age, because younger employees were treated more favorably than her at the workplace.[3] *Id*. at ¶ 42. Plaintiff also contends that because some of her superiors and co-workers are African-American, she has been discriminated and retaliated against upon the basis of her race and color. *Id*. at ¶ 48.

In addition, Plaintiff alleges that the Defendant "deprived her of equal employment opportunities and otherwise adversely affected her status as an employee because of her sex" and that these adverse employment actions constitute "illegal retaliation." *Id*. at ¶¶ 58 and 63. Lastly, Plaintiff contends that Defendant created a hostile work environment at TSA, "based on harassment, age, race, sex discrimination, and prior EEO activities." *Id*. at ¶ 69. And so, Plaintiff seeks to recover, among other things, monetary damages and attorney's fees and costs from Defendant. *Id*. at Prayer for Relief.

### B. Procedural Background

Plaintiff commenced this civil action on April 22, 2023. ECF No. 1. On August 2, 2023, Plaintiff filed an amended complaint. ECF No. 16.

---

[3] In the amended complaint, Plaintiff identifies the following TSA employees, who are under the age of 40, who she alleges received more favorable treatment: Kenneth Steburg (White, male, under age 40); Kiran Annavarapu (Asian, male, under age 40); Pamela Melton (African-American, female, under age 40); and Brad McConnell (White, male, under age 40). ECF No. 16 at ¶ 42.

On November 3, 2023, the Defendant filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 23 and 23-1. Plaintiff filed a response in opposition to the Defendant's motion on November 29, 2023. ECF No. 26. The Defendant filed a reply brief on December 11, 2023. ECF No. 27.

The Defendant's motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III.   LEGAL STANDARDS

### A.   Fed. R. Civ. P. 8(a) And 12(b)(6)

Under Fed. R. Civ. P. 8(a), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief. To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Inc,.* 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

### B.   Title VII

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. *See* 42 U.S.C. § 2000e. There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-

6

shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)).  To do so, a plaintiff "'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'" *Id.* at 607 (quoting *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (brackets existing)).  And so, a plaintiff must provide "'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Id.* (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995)).

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*. *See Tuck*, 973 F.2d at 374.  Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  Specifically relevant to this employment discrimination dispute, a plaintiff may establish a *prima facie case* of discrimination under Title VII by showing: (1) her membership in a protected class; (2) her satisfactory job performance; (3) that she was subjected to an adverse employment action; and (4) that similarly situated employees outside of the protected class received more favorable treatment.  *Id.*  The failure to demonstrate any one of these required elements is fatal to a plaintiff's ability to establish a *prima facie* case. *See Hemphill v. Aramark Corp.*, 2014 WL 1248296, at *19 (D. Md. Mar. 25, 2014), *aff'd*, 582 F. App'x 151 (4th Cir. 2014).

If a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  And so, "[t]he

plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Plaintiff asserts a hostile work environment claim under Title VII in this case. The United States Supreme Court has established that when determining if "an actionable hostile work environment claim exists," courts must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). And so, the Fourth Circuit has held that to sustain a hostile work environment claim, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex and/or race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (internal citation and quotations omitted); *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117 (4th Cir. 2021) (same). And so, a plaintiff properly pleads a hostile work environment claim if she alleges facts to show that her work environment was so pervaded by discrimination that the conditions of her employment were altered. *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013).

Lastly, Title VII's anti-retaliation provision makes it unlawful "for an employer to discriminate against [an] . . . employee[] . . . because he has opposed any practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation . . . ." 42 U.S.C. § 2000e-3. And so, the Fourth Circuit has held that a Title VII plaintiff "may prove a Title VII retaliation claim either through direct evidence of retaliatory animus or *via* the application of the *McDonnell Douglas* burden-shifting framework." *Roberts*, 998 F.3d at 122 (citation omitted). To that end, a Title VII plaintiff may prevail under the burden-shifting framework by showing that she: (1) "engaged in protected activity"; (2) "[her] employer took an adverse action against [her]"; and (3) that "a causal relationship exist[s]" between plaintiff's protected activity and the employer's adverse action. *See id*. With regards to satisfying the adverse action element, the Supreme Court has also held that a Title VII plaintiff "must show that a reasonable employee would have found the challenged action materially adverse . . . which

. . . means it . . . might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations and quotations omitted); *see also Laurent-Workman v. Wormuth*, 54 F.4th 201, 213 (4th Cir. 2022) (explaining that the Supreme Court widened the scope of conduct that can constitute an adverse action by an employer from solely conduct that affects an employee's "compensation, terms, conditions, or privileges of employment."). With regards to the causal relationship element, a causal link is shown when the materially adverse employment action occurs shortly after the employee engages in protected activities. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

If a Title VII plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Roberts*, 998 F.3d at 122 (citation omitted). And so, if the employer provides a legitimate non-retaliatory reason, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.*

### C. The ADEA

As a final matter, the ADEA prohibits an employer from discharging any individual, or otherwise discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). To establish a *prima facie* case of age discrimination under the ADEA, plaintiff must prove that she: (1) was protected by the ADEA; (2) suffered an adverse employment action; (3) was performing her job at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) was replaced by a substantially younger worker. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993). Similar to claims brought under Title VII, a plaintiff may proceed under the *McDonnell Douglas* framework to establish a *prima facie* case of age discrimination under the ADEA. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc).

### IV.   LEGAL ANALYSIS

The Defendant has moved to dismiss the amended complaint upon the grounds that: (1) with the exception of her August 10, 2020, suspension, Plaintiff fails to allege facts to show an adverse employment action, or materially adverse change in employment, to support her

disparate treatment discrimination and retaliation claims set forth in Counts I, II, III and IV of the amended complaint; (2) Plaintiff fails to allege facts to show a discriminatory or causal link between her protected classes and any adverse employment actions, to support her disparate treatment discrimination and retaliation claims set forth in Counts I, II, III and IV of the amended complaint; (3) Plaintiff fails to allege facts to show that the alleged unwelcomed workplace conduct was severe or pervasive to support her hostile work environment claim in Count V of the amended complaint; and (4) the amended complaint lacks sufficient facts to give rise to a reasonable inference of discrimination.  ECF No. 23-1.  And so, Defendant requests that the Court dismiss this matter.  *Id*. at 22.

In her response in opposition to Defendant's motion to dismiss, Plaintiff counters that the Court should not dismiss this matter, because: (1) she has sufficiently alleged facts to establish a *prima facie* case of discrimination and retaliation, and a hostile work environment, under Title VII and the ADEA and (2) the amended complaint contains sufficient factual allegations to show a right to relief that is above speculation.  ECF No. 26-1.  And so, Plaintiff requests that the Court deny the Defendant's motion to dismiss.  *Id*.

For the reasons that follow, with the exception of her five-day suspension on August 10, 2020, Plaintiff fails to sufficiently allege facts in the amended complaint to show an adverse employment action, or materially adverse change in her employment, to support her disparate treatment discrimination and retaliation claims.  The factual allegations in the amended complaint are also not sufficient to show a discriminatory link between Plaintiff's protected classes and her August 10, 2020, suspension.

A careful reading of the amended complaint shows, however, that Plaintiff has sufficiently alleged facts that, taken as true, show a causal link between her August 10, 2020, suspension and her protected activities during 2020, to state a plausible claim for retaliation based upon the suspension.  Lastly, the amended complaint lacks facts to show unwelcomed workplace conduct that is sufficiently severe or pervasive to state a plausible hostile work environment claim.  And so, the Court: (1) GRANTS-in-PART the Defendant's motion to dismiss; (2) DISMISSES Counts I, II, III and V of the amended complaint; and DISMISSES Count IV of the amended complaint for all claims, with the exception of Plaintiff's retaliation claim based upon her August 10, 2020, suspension.

### A. Plaintiff Fails To State Plausible Disparate Treatment Discrimination Claims Under Title VII And The ADEA

As an initial matter, with the exception of her August 10, 2020, five-day suspension without pay, Plaintiff fails to allege facts to show an adverse employment action to support her discrimination claims based upon race, age and sex in Counts I, II and III of the amended complaint.

Plaintiff may establish a *prima facie case* of discrimination by showing: (1) her membership in a protected class; (2) her satisfactory job performance; (3) that she was subjected to an adverse employment action; and (4) that similarly situated employees outside of the protected class received more favorable treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802; see also *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993) (explaining that to establish a *prima facie* case of age discrimination under the ADEA, plaintiff must prove that she: (1) was protected by the ADEA; (2) suffered an adverse employment action; (3) was performing her job at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) was replaced by a substantially younger worker.).  And so, to state a plausible discrimination claim here, Plaintiff must allege facts to show, among other things, that she was subjected to an adverse employment action.

When determining what constitutes an "adverse employment action," the Fourth Circuit has consistently focused on "whether there has been discrimination in what could be characterized as ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating."  *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981); *see also Chang Lim v. Azar*, 310 F. Supp. 3d 588, 601 (D. Md. 2018) (adverse employment actions typically include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion").  Given this, this Court has held that none of the following actions are adverse employment actions:

> [F]ailing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee "AWOL"; or issuing a personal improvement plan, "an 'Attendance Warning,' a verbal reprimand, a formal letter of reprimand, or a proposed termination.

*Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013); *see also Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 423 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th

Cir. 2008) ("letter of reprimand . . .did not, in and of itself, constitute an adverse employment action"); *Jeffers v. Thompson,* 264 F. Supp. 2d 314, 330 (D. Md. 2003) (explaining that reprimands or poor performance reviews are not adverse employment actions unless they work real harm to employment or are intermediate steps to discharge); *Allen v. Rumsfeld,* 273 F. Supp. 2d 695, 706 (D. Md. 2003) (clarifying that low performance evaluations, reprimands, and counseling were not adverse employment actions because they "did not affect the terms, conditions, or benefits of [the plaintiff's] employment").  And so, for an action to be sufficiently adverse to trigger Title VII or ADEA liability, it must be more than a "trivial discomfort" endemic to employment.  *See Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).

A careful reading of the amended complaint in this case makes clear that, with the exception of her August 10, 2020, five-day suspension without pay, Plaintiff fails to allege facts to show that she suffered an adverse employment action in the amended complaint.  Plaintiff alleges a litany of actions taken by her supervisors in the amended complaint, including the following:

- On May 13, 2019, her fourth level supervisor, Cynthia Rahmani, yelled at her during a meeting and was "extremely disrespectful toward" her, such that Plaintiff felt "a threat to her job."  *Id*. at ¶ 16.

- In December 2019, her first level supervisor, Detlev Hetzler, made comments that Plaintiff "strongly believed" made reference to "an active federal case" that she had pending in federal court.  *Id*. at ¶ 17.

- On January 26, 2020, Mr. Hetzler and another TSA employee, Kenneth Steburg, discussed the subject of alcohol in her presence during work hours.  *Id*. at ¶ 18.

- On February 2, 2020, Mr. Steburg unwelcomingly "spoke loudly about Bourbon" and "used the word pedophile three times" in her presence.  *Id*. at ¶ 19.

- On February 4, 2020, Mr. Steburg gave "pat down instructions contrary to the [TSA's] Standard Operating Procedure," by stating to a male employee during the pat down that "we are going to get friendly now," and later stating to the employee "now you have had your airport massage."  *Id*. at ¶ 20.

- On February 17, 2020, Mr. Hetzler "singled out and humiliated [her]," by directing her to leave a briefing while allowing other employees to remain in the room.  *Id*. at ¶ 21.

- On February 19, 2020, Mr. Hetzler "made refence to [her] age in a sarcastic manner," by looking directly at Plaintiff while making a comment about "60 years of age."  *Id*. at ¶ 23.

- On March 4, 2020, TSA denied Plaintiff's request not to be assigned to work with another TSA employee, Brooke Hall, and TSA management declined to discipline two other TSA employees for failing to complete their work assignments, while Plaintiff worked alone at her post.  *Id*. at ¶ 24.

- On March 8, 2020, Plaintiff received a letter of reprimand, regarding an incident where she was alleged to have "jabbed" Brooke Hall.  *Id*. at ¶ 25.

- On March 9, 2020, TSA management denied Plaintiff's request to correct her fiscal year 2019 TOPS performance rating and TSA management also refused to remove an expunged Maryland Aviation Authority record in Plaintiff's file.  *Id*. at ¶ 27.

- On April 28, 2020, Plaintiff's supervisor, Jill Thrash (White/Caucasian, female, over 40 years old), and Brad McConnell (Caucasian/White, male, under age 40), approached Plaintiff while working to discuss personnel and disciplinary issues.  *Id*. at ¶ 28.  Plaintiff alleges that after she "refused to discuss her personnel and disciplinary records in a public area," Ms. Thrash asked Plaintiff to sign a National Resolution Center Designated Grievance Official document, which she refused to do.  *Id*.

- On June 1, 2020, Plaintiff's manager, Darrin Watson, issued her a proposed five-day suspension related to the April 28, 2020, incident involving Ms. Thrash.  *Id*. at ¶ 30.

- On June 10, 2020, Mr. Hetzler stated in front of other employees that he had a "quick personnel issue to discuss with" Plaintiff.  *Id*. at ¶ 31.

- On June 23, 2020, Plaintiff went to the office of her third level supervisor, Sandra Heredia, to discuss her proposed suspension, but Ms. Heredia told Plaintiff that she was not prepared for the meeting, and "slammed her feet into the floor as she walked in and out of her office to retrieve documents, flopped herself into her chair when she returned to the office."  *Id*. at ¶ 32.

- On June 29, 2020, Plaintiff witnessed Mr. Hetzler "do a shoulder crunch" with another TSA employee, Ms. Swartz, and fall onto her.  *Id*. at ¶ 33.

- On August 10, 2020, Plaintiff received a notice of a five-day suspension.  *Id*. at ¶ 34.

- On February 23, 2023, Plaintiff alleges that that she received a 14-day suspension, which was later rescinded by TSA on March 6, 2023.  *Id*. at ¶ 36.

Taken as true, none of these alleged actions, other than Plaintiff's August 10, 2020, suspension without pay, constitute adverse employment actions under Title VII and the ADEA.

Plaintiff does not allege any facts to show that any of the other alleged adverse employment actions negatively or adversely affected the terms or conditions of her employment

with TSA.  *See generally* ECF No. 16.  Notably, the Fourth Circuit has recognized that yelling, or loud and harsh criticism, which describes much of the conduct that Plaintiff alleges in the amended complaint, alone, is not an adverse employment action.  *See Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (explaining that yelling and spying on an employee are not adverse employment actions because they do not affect "the terms, conditions, or benefits" of employment); *Guluma v. DeJoy,* No. DLB-20-3588, 2022 WL 1642261, at *6 (D. Md. May 24, 2022) (explaining that "allegations of yelling and criticism" that "do not describe conduct that adversely affected the terms, conditions, or benefits of" employment do not constitute adverse employment actions).[4]

Plaintiff's March 8, 2020, letter of reprimand is similarly not an adverse employment action.  ECF No. 26-1 at 12-13; *see also Ryan v. McAleenan*, 2020 WL 1663172, at *18 (D. Md. Apr. 3, 2020) (clarifying that letters of reprimand also do not constitute adverse employment actions unless they are "accompanied by collateral consequences, such as the possibility of termination, a reduction in pay, or the denial of a promotion.").  Again, the amended complaint lacks any facts to show that the letter of reprimand at issue here impacted Plaintiff's work, by changing her compensation, job title or level of responsibility, opportunity for promotion, or causing her direct economic harm.  ECF No. 16; *see also Allen*, 273 F. Supp. 2d at 706 (explaining that low performance evaluations, reprimands, and counseling were not adverse employment actions because they "did not affect the terms, conditions, or benefits of [the plaintiff's] employment").

Because Plaintiff does not allege facts in the amended complaint to show that any of the alleged adverse employment actions, other than her suspension on August 10, 2020, had an impact on her work or employment status, she fails to allege an adverse employment action to support her Title VII and ADEA discrimination claims.  And so, the Court must DISMISS Plaintiff's Title VII and ADEA discrimination claims that are not based upon her August 10, 2020, suspension.

---

[4] Plaintiff acknowledges that her suspension on February 23, 2023, was later rescinded by TSA, indicating that this action is similarly not an adverse employment action under Title VII and the ADEA.  ECF No. 16 at ¶ 5; *See, e.g., Amirmokri*, 437 F. Supp. 2d at 423; *Rock v. McHugh*, 819 F. Supp. 2d 456, 470 (D. Md. 2011); *Spriggs v. Pub. Serv. Comm'n of Maryland*, 197 F. Supp. 2d 388, 394 (D. Md. 2002) ("reversed or rescinded actions . . . cannot form the basis for . . . liability under the employment discrimination laws").

**B.  Plaintiff Fails To State A Plausible Title VII Retaliation Claim**

For similar reasons, Plaintiff fails to allege facts to show a materially adverse
employment action to support her Title VII retaliation claims in Count IV of the amended
complaint.  To prove her Title VII retaliation claim, Plaintiff must show, among other things,
that her employer took a materially adverse action against her.  *Jacobs v. N.C. Admin. Off. of the
Cts.*, 780 F.3d 562, 578 (4th Cir. 2015).  To accomplish this, Plaintiff "must show that a
reasonable employee would have found the challenged action materially adverse . . . which . . .
means it . . . might have dissuaded a reasonable worker from making or supporting a charge of
discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also
Laurent-Workman v. Wormuth*, 54 F.4th 201, 213 (4th Cir. 2022) (explaining that the Supreme
Court widened the scope of conduct that can constitute an adverse action by an employer from
solely conduct that affects an employee's "compensation, terms, conditions, or privileges of
employment").[5]

But again, other than Plaintiff's August 10, 2020, suspension without pay, none of the
alleged materially adverse employment actions in this case are the kinds of adverse employment
actions that might have dissuaded a reasonable worker from making or supporting a charge of
discrimination.  Indeed, while Plaintiff alleges numerous materially adverse employment actions
in the amended complaint, including yelling, criticism, the March 8, 2020, letter of reprimand
and two proposed suspensions, she fails to allege facts to show how any of these actions would
have dissuade a reasonable employee from making or supporting a charge of discrimination.[6]
*See generally* ECF No. 16.  And so, the Court must also DISMISS Plaintiff's retaliation claims
that are not based upon her August 10, 2020, suspension.

---

[5] Because "materially adverse actions" are not limited to actions that affect the terms of a Title IV
plaintiff's employment, the standard for showing a materially adverse action is more lenient that for
showing an adverse employment action within the context of a discrimination claim.  *Burlington Northen
& Santa Fe Ry.* Co. 548 U.S. at 64.  Nonetheless, Plaintiff must allege facts in the amended complaint to
show that the challenged actions in this case "might have dissuaded a reasonable worker from making or
supporting a charge of discrimination."  *Id*. at 68 (defining "materially adverse" for retaliation claims).

[6] Plaintiff argues in her response in opposition that her "forced" exclusion from a meeting on February
17, 2020, affected her "workflow and performance," the "threatening" statement from Cynthia Rahmani
on May 13, 2019 "would create fear for a reasonable employee" and she received the letter of reprimand
on her birthday.  ECF No. 26-1 at 4, 15.  But she fails to explain how these actions would have dissuaded
a reasonable employee from making or supporting a charge of discrimination.

**C.  Plaintiff Fails To Show A Discriminatory Link
    Between Her Protected Classes And Her Suspension**

While Plaintiff's August 10, 2020, suspension is an adverse employment action within the context of Title VII and the ADEA, her discrimination claim based upon this suspension remains implausible, because the amended complaint lacks facts to show a discriminatory link between any of her protected classes and the suspension.  As this Court has recognized, "[t]he *sine qua non* of discrimination cases, whether for disparate treatment or hostile work environment, is that the offending conduct is based on a protected characteristic." *Gough v. Rock Creek Sports Club*, 2021 WL 795447, at *2 (D. Md. Mar. 2, 2021).  Given this, there must be "some connective thread between the alleged mistreatment and the protected status."  *Id*.  And so, Plaintiff must allege facts to show that her prior protected activity caused the suspension at issue in the case.  *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 578 (4th Cir. 2015) (explaining that a plausible retaliation claim involves allegations that the employee: (1) engaged in a protected activity; (2) was subject to an adverse action; and (3) the protected activity and adverse action were causally connected); *see also Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity") (emphasis in original).

Here, Plaintiff fails to allege any facts to connect her August 10, 2020, five-day suspension without pay to her race, sex or age.  Plaintiff generally alleges that she has been discriminated against upon the basis of her age, because younger employees were treated more favorably than her at the workplace.  ECF No. 16 at ¶ 42.  Plaintiff also alleges that she has been discriminated against upon the basis of her race and color, because some of her TSA superiors and co-workers are African-American.  *Id*. at ¶ 48.  But, as Defendant correctly observes, such conclusory statements alone, are not sufficient to state a plausible discrimination claim based upon race, sex or age.  ECF No. 23-1 at 15; *see also Cole v. Hillside Fam. of Agencies, Inc*., 2011 WL 2413928, at *4 (D. Md. June 9, 2011); *Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Johnson v. Davenport*, 2012 WL 933195, at *1 (D. Md. Mar. 15, 2012) ("bald" allegations of discrimination and "mere conclusory averment[s]" are "insufficient to withstand a dispositive motion").  Indeed, there are no facts in the amended complaint to show that Plaintiff's August

10, 2020, suspension was due to her race, sex or age.  ECF No. 16.  Given this, Plaintiff's discrimination claim based upon her August 10, 2020, suspension is not plausible.

While a closer question, the Court is satisfied that Plaintiff alleges sufficient facts to show a causal connection between her suspension and her protected activity during 2020, to support her retaliation claim based upon the August 10, 2020, suspension.  Plaintiff can show a causal link between her protected activity and this suspension by showing that the suspension occurred shortly after she engaged in protected activity.  *See e.g., Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

In this case, there is no dispute that Plaintiff filed two EEO complaints in 2020.  ECF Nos. 16 at ¶ 4, 23-1 at 16-17.  But Plaintiff does not specify when she filed the complaints.  ECF No. 16 at ¶ 4.  Plaintiff also alleges that she engaged in the following "opposition" protected activities during the spring and summer of 2020:

- On April 28, 2020, Plaintiff protested and reported the request to discuss her personnel and disciplinary records at her workstation to Mr. Watson.  ECF No. 16 at ¶ 28.

- On May 30, 2020, Plaintiff sent an email to Mr. Watson expressing a colleague's discomfort with working for Mr. Hetzler.  *Id.* at ¶ 29.

- On June 1, 2020, Plaintiff reported statements made during the April 28 2020, incident to Mr. Watson.  *Id.* at ¶ 30.

- On June 29, 2020, Plaintiff reported Mr. Hetzler' conduct with TSO Swartz to Mr. Watson.  *Id.* at ¶ 33.

Taking these allegations as true, the Court is satisfied that Plaintiff has alleged sufficient facts to show a close temporal proximity between her protected activities in 2020 and her August 10, 2020, suspension, which occurred approximately two months after Plaintiff alleges that she engaged in these activities.  And so, the Court will not dismiss Plaintiff's retaliation claim based upon her August 10, 2020, suspension.[7]

---

[7] While the Court declines to dismiss Plaintiff's retaliation claim based upon the August 10, 2020, suspension at this stage of litigation, the Court observes that Plaintiff must show that the decisionmakers for her suspension were aware of her protected activity at the time of the suspension to prevail on her retaliation claim.  *See, e.g Jennings v. Frostburg State Univ.,* 679 F. Supp. 3d 240, 281 (D. Md. 2023) ("The Fourth Circuit has made clear that to establish a causal relationship between the protected activity and the adverse action, 'a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred.'").  In this regard, the Court observes that the amended

**D.  Plaintiff Also Fails To State a Plausible Hostile Work Environment Claim**

As a final matter, a careful reading of the amended complaint also shows that Plaintiff fails to state a plausible hostile work environment claim, because she does not sufficiently allege facts to show that the unwelcomed conduct alleged in this case was severe and pervasive.  To state a plausible hostile work environment claim, Plaintiff must allege facts to show that there is (1) unwelcome conduct; (2) that is based on her sex, age, color and/or race; (3) which is sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.  *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011); *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117 (4th Cir. 2021) (same).  And so, to establish a plausible hostile work environment claim, Plaintiff must allege facts to show that her work environment was so pervaded by discrimination that the conditions of her employment were altered.  *Vance v. Ball State Univ*., 570 U.S. 421, 427 (2013); *see also Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 277 (4th Cir. 2015); *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006) (considering hostile work environment claim under the ADEA); *Davis v. Yellen*, No. 08-CV-447 (KBJ), 2021 WL 2566763, at *17 (D.D.C. June 22, 2021) (explaining that in a hostile work environment claim, the plaintiff must "always prove the conduct at issue was not merely tinged with offensive connotations, but actually constituted discrimination because of the employee's protected status").

The Fourth Circuit has held that the issue of whether the unwelcomed conduct is sufficiently severe or pervasive "has both a subjective and objective component."  *Perkins v. Int'l Paper Co*., 936 F.3d 196, 208 (4th Cir. 2019).  Given this, when deciding whether unwelcomed conduct is severe and pervasive,  the Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993).  Notably, here, the Supreme Court and Fourth Circuit have both recognized that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory

---

complaint is unclear on whether Mr. Watson was the decisionmaker for Plaintiff's suspension.  *See generally* ECF No. 16.

changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998); *see also E.E.O.C. v. Sunbelt Rentals, Inc*., 521 F.3d 306, 315-16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor . . . are not actionable under Title VII."). And so, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Oncale v. Sundowner Offshore Servs. Inc*., 523 U.S. 75, 81 (1998).

In this case, Plaintiff fails to allege facts to show that the unwelcome conduct alleged in the amended complaint was severe or pervasive. As discussed above, Plaintiff alleges a litany of alleged discriminatory and retaliatory conduct that she contends occurred between May 2019 and July 23, 2023. ECF No. 16. Specifically, Plaintiff alleges that a hostile work environment was created because, among other things:

- Her fourth level supervisor, Cynthia Rahmani, yelled at her during a meeting and was "extremely disrespectful toward" her and she felt "a threat to her job." ECF No. 16 at ¶ 16.

- Mr. Hetzler and another TSA employee, Kenneth Steburg, discussed the subject of alcohol in her presence during work hours and Mr. Steburg unwelcomingly "spoke loudly about Bourbon" and "used the word pedophile three times" in her presence. *Id*. at ¶¶ 18 and 19.

- Mr. Steburg gave "pat down instructions contrary to the [TSA's] Standard Operating Procedure," by stating to a male employee during the pat down that "we are going to get friendly now," and later stating to the employee "now you have had your airport massage." *Id*. at ¶ 20.

- Mr. Hetzler "singled out and humiliated [her]," by directing her to leave a briefing while allowing other employees to remain in the room and later made refence to [her] age in a sarcastic manner." *Id*. at ¶¶ 21 and 23.

- TSA management denied Plaintiff's request to correct her fiscal year 2019 TOPS performance rating and TSA management also refused to remove an expunged Maryland Aviation Authority record in Plaintiff's file. *Id*. at ¶ 27.

- On April 28, 2020, Plaintiff's supervisor, Jill Thrash (White/Caucasian, female, over 40 years old), and Brad McConnell (Caucasian/White, male, under age 40), approached Plaintiff while working to discuss personnel and disciplinary issues. *Id*. at ¶ 28.

- On June 10, 2020, Mr. Hetzler stated in front of other employees that he had a "quick personnel issue to discuss with" Plaintiff. *Id*. at ¶ 31.

- On June 23, 2020, Plaintiff went to the office of her third level supervisor, Sandra Heredia, to discuss her proposed suspension, but Ms. Heredia told Plaintiff that she was not prepared for the meeting, and "slammed her feet into the floor as she walked in and out of her office to retrieve documents, flopped herself into her chair when she returned to the office." *Id*. at ¶ 32.

- On June 29, 2020, Plaintiff witnessed Mr. Hetzler "do a shoulder crunch" with another TSA employee, Ms. Swartz, and fall onto her. *Id*. at ¶ 33.

- On August 10, 2020, Plaintiff received a notice of a five-day suspension. *Id*. at ¶ 34.

While these allegations of unwelcomed conduct, taken as true, show that Plaintiff was treated rudely and/or disrespectfully by some of her supervisors and colleagues, the alleged unwelcomed conduct falls short of the kind that courts have found to be severe or pervasive conduct. *See, e.g. Scannell v. Bel Air Police Dep't*., 968 F. Supp. 1059, 1063 (D. Md. 1997).

Plaintiff also does not allege any facts to show that this unwelcomed conduct was connected to either her race, age, or sex. ECF No. 16. Indeed, at bottom, the allegations in the amended complaint make clear that Plaintiff complains of the kinds of ordinary workplace disputes that this Court has declined to consider severe and pervasive. *Scannell*, 968 F. Supp. at 1063 ("Title VII is not designed to purge the workplace of vulgarity"); *see also Sunbelt Rentals*, 521 F.3d at 315; *Baqir*, 434 F.3d at 747 (general complaints of rude treatment were insufficient to state a hostile work environment claim). And so, the Court also DISMISSES Plaintiff's hostile work environment claim set forth in Count V of the amended complaint.

### V. CONCLUSION

In sum, with the exception of her five-day suspension on August 10, 2020, Plaintiff fails to sufficiently allege facts in the amended complaint to show an adverse employment action, or a materially adverse change in her employment, to support her disparate treatment discrimination and retaliation claims. The factual allegations in the amended complaint are also not sufficient to show a discriminatory link between Plaintiff's protected classes and her August 10, 2020, suspension.

But a careful reading of the amended complaint shows that Plaintiff has sufficiently alleged facts that, taken as true, show a causal link between her August 10, 2020, suspension and her protected activities during 2020. Lastly, the amended complaint lacks facts to show

unwelcomed workplace conduct that is sufficiently severe or pervasive to state a plausible hostile work environment claim.  And so, the Court:

1. **GRANTS-in-PART** the Defendant's motion to dismiss;

2. **DISMISSES** Counts I, II, III and V of the amended complaint; and

3. **DISMISSES** Count IV of the amended complaint, with the exception of Plaintiff's retaliation claim based upon her August 10, 2020, suspension.

A separate Order shall issue.

**IT IS SO ORDERED.**

<u>s/Lydia Kay Griggsby</u>
LYDIA KAY GRIGGSBY
United States District Judge

21