IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CHRISTINA RYAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 23-cv-01364-LKG |
| | ) | |
| v. | ) | Dated:  March 27, 2026 |
| | ) | |
| MARKWAYNE MULLIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

## I.    INTRODUCTION

The remaining claims in this employment discrimination matter are retaliation claims brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, by the Plaintiff, Christina Ryan, against the Defendant, the Secretary of Homeland Security Markwayne Mullin, arising from the Plaintiff's employment with the Transportation Security Administration ("TSA").[1]  ECF Nos. 16 and 29.

The Defendant has filed a motion for summary judgment on these claims, pursuant to Fed. R. Civ. P. 56(a), and a memorandum in support thereof.  ECF Nos. 59 and 59-1.  The Government's motion is fully briefed.  ECF Nos. 59, 59-1, 60, 60-1 and 61.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Defendant's motion for summary judgment (ECF No. 59); (2) **ENTERS JUDGMENT** summarily in favor of the Defendant on the Plaintiff's Title VII retaliation claims; and (3) **DISMISSE**S this matter.

---

[1] The Plaintiff initially brought this case against former Secretary of Homeland Security, Alejandro Mayorkas.  ECF No. 1.  The Court substitutes Secretary Mullin as the proper Defendant in this matter.

1

II.   **FACTUAL AND PROCEDURAL BACKGROUND**[2]

   A.   **Factual Background**

The remaining claims in this employment discrimination matter are Title VII retaliation claims brought by the Plaintiff against Secretary Mullin, arising from the Plaintiff's employment with TSA.  ECF Nos. 16 and 29.  As relief, the Plaintiff seeks to recover monetary damages, attorney's fees and costs from the Defendant.  ECF No. 16 at Prayer for Relief.

Case Background

As background, the Plaintiff self-identifies as a Caucasian/White female.  *Id*. at ¶ 6.  The Plaintiff is currently employed by TSA as a Lead Transportation Security Officer ("LTSO") at the Baltimore Washington International Airport/Thurgood Marshall Airport ("BWI"), located in Linthicum, Maryland.  *Id*. at ¶ 7.  TSA is an agency of the United States Department of Homeland Security ("DHS") that has authority over the security and transportation systems within, and connecting to, the United States.  *Id*. at ¶ 3.

During the time period relevant to this case, the Plaintiff worked for TSA at BWI as a LTSO, Advanced Threat Local Allocation Strategy ("ATLAS") Team.  ECF No. 59-1 at 4.  It is undisputed that Darrin Watson was the manager of TSA's ATLAS team and is the Plaintiff's second-line supervisor.  *Id.*

The LOR And The April 28, 2020, Incident

On March 8, 2020, TSA issued the Plaintiff a Letter of Reprimand ("LOR").  *Id.*  The LOR stated that it was intended to "officially reprimand" the Plaintiff for "discourteous conduct" that occurred on February 25, 2020.  *Id.*

The LOR states that, on February 25, 2020, the Plaintiff interrupted a colleague, Transportation Security Officer Brooke Hall, in a loud and disruptive manner and made repeated physical contact with Ms. Hall's arm.  *Id.*  The LOR noted that Ms. Hall immediately objected to the physical contact, and that a supervisor present during the interaction was visibly unsettled by the Plaintiff's conduct.  *Id.*

---

[2] The facts recited in this memorandum opinion and order are taken from the amended complaint (ECF No. 16); the Defendant's motion for summary judgment (ECF No. 59) and memorandum in support thereof (ECF No. 59-1); the Plaintiff's response in opposition to the Defendant's motion for summary judgment (ECF No. 60) and memorandum in support thereof (ECF No. 60-1); and the Defendant's reply (ECF No. 61).

The LOR found that the Plaintiff had violated the TSA Code of Conduct by failing to exercise courtesy and professionalism toward her colleagues and further noted that as a LTSO, the Plaintiff was expected to model appropriate conduct for subordinate employees. *Id.* The LOR cautioned that future misconduct could result in further disciplinary action up to and including removal. *Id.* The Plaintiff refused to sign the LOR when her supervisor attempted to deliver it and she disputes both the characterization of the physical contact and the basis for issuing the LOR. *Id.*

The Plaintiff subsequently filed a grievance related to the LOR, and Supervisory Transportation Security Inspector Jil Thrash was designated as the Grievance Official. *Id.* at 6.

After the Plaintiff failed to respond to two emails requesting her signature on the grievance decision, Ms. Thrash traveled to BWI to deliver the decision in person on April 28, 2020. *Id.* Ms. Thrash documented that this interaction was marked by the Plaintiff speaking over her repeatedly, making demands, and ultimately walking away before the conversation could conclude. *Id.* at 6–7. Ms. Thrash described herself as shocked by the Plaintiff's dismissive and disrespectful demeanor throughout the exchange. *Id.* at 7. The Plaintiff disputes Ms. Thrash's account of the interaction, but the Plaintiff acknowledges that she walked away. *Id.* The Plaintiff contends that she was entitled to a pre-decision meeting that she did not receive prior to the issuance of the final grievance decision. *Id.*

The Plaintiff's Retaliation Claims

In the remaining claims in this case, the Plaintiff alleges that the Defendant retaliated against her, by suspending her for five days on August 10, 2020, after she engaged in the following protected activities: (1) on April 28, 2020, the Plaintiff protested and reported her request to discuss her personnel and disciplinary records at her workstation to Mr. Watson; (2) on May 28, 2020, the Plaintiff sent an email to Mr. Watson expressing a colleague's discomfort with working for Detlov Hetzler, the Plaintiff's alleged first-level supervisor (ECF No. 16 at ¶ 8); (3) on June 1, 2020, the Plaintiff reported statements made during the April 28, 2020, incident at work to Mr. Watson; (4) on June 29, 2020, the Plaintiff reported Mr. Hetzler's alleged improper conduct towards a colleague, Ms. Swartz, to Mr. Watson; (5) on June 8, 2020, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"); and (6) on August 7, 2020, the Plaintiff filed a second charge of discrimination with the EEOC. ECF No. 59-1 at 11.

<u>The April 28, 2020, Protest</u>

The Plaintiff alleges that she protested and reported to Mr. Watson a request to discuss her personnel and disciplinary records while at her workstation on April 28, 2020.  ECF No. 16 at ¶ 28.  But, it is undisputed that the Plaintiff testified during her deposition that she did not make any "protest" or "report" to Mr. Watson on April 28, 2020.  ECF No. 59-1 at 12.  And so, the Plaintiff appears to concede that this alleged protected activity did not occur.  *Id.*

<u>The May 28, 2020, Protest</u>

The Plaintiff also alleges that she engaged in protected activity on May 28, 2020, by sending an email to Mr. Watson expressing the discomfort of a work colleague about working with Mr. Hetzler.  ECF No. 16 at ¶¶ 8 and 29.  The subject email provides that:

> On May 20, 2020[,] at approximately 1245 hours at lower[-]level A during Atlas work hours. Katie Swartz TSO stated that she is uncomfortable with the other male Supervisor. I asked her if she meant [Detlov] Hetzler STSO? TSO Swartz responded [that] she thinks so. I asked if he had three stripes Swartz stated, yes. Swartz TSO stated that Ted made derogatory comments while working with her that made her uncomfortable. Ryan LTSO asked Swartz TSO specifically what derogatory comments did STSO ma[d]e to her? Swartz made her uncomfortable. TSO stated Ted's comments just made her uncomfortable. Swartz stated she did not want to work with Ted STSO again. Swartz asked Ryan LTSO what days does Ted BTSO have off? Ryan LTSO sta[r]ted Friday thru Monday. Swartz stated those are her days off also. Nathan Lee TSO was present during this time. Please do not Retaliate against Swartz TSO for her report. I am assuming the correct person was identified as Ted.

ECF No. 59-1 at 19.

<u>The June 1, 2020, Protest</u>

The Plaintiff alleges that she engaged in protected activity on June 1, 2020, when she reported certain statements made on April 28, 2020, to Mr. Watson.  ECF No. 16 at ¶ 30.  But the Plaintiff testified during her deposition that she did not make a report to Mr. Watson on June 1, 2020.  ECF No. 59-1 at ¶ 11.

The Plaintiff also stated in her response to the Defendant's written interrogatories that she does "not recall writing a statement on June 1, 2020."  ECF No. 59-1 at 11.  And so, again, the Plaintiff appears to also concede that she did not engage in protected activity on June 1, 2020.  *Id.*

4

<u>The June 29, 2020, Protected Activity</u>

The Plaintiff also alleges that she engaged in protected activity on June 29, 2020, when she reported statements made during the April 28, 2020, incident to Mr. Watson.  ECF No. 16 at ¶ 33.  But, the Plaintiff appears to concede that she did not make a report on April 28, 2020.  *Id.*; ECF No. 59-1 at 12.

<u>The June 8, 2020, And August 7, 2020, EEO Complaints</u>

Lastly, it is undisputed that the Plaintiff filed two complaints with the EEOC related to her employment with TSA on June 8, 2020, and August 7, 2020, respectively.  On June 8, 2020, the Plaintiff filed EEO Complaint No. 531-2021-00197X (Agency No. HS-TSA-01330-2020) alleging disparate treatment and harassment (non-sexual) claims related to a series of incidents that occurred between December 2019 and February 2020.  ECF No. 59-1 at 12; ECF No. 16 at ¶ 62.  The June 8, 2020, Charge alleges that: (1) in December 2019, a TSA management official threatened the Plaintiff, by telling her that she did not have to worry about the Government shutdown; (2) on January 26, 2020, a TSA management official asked the Plaintiff if she was trying to get him in trouble and made unwelcome comments about alcohol; (3) on February 2, 2020, a TSA employee spoke loudly and made inappropriate comments about alcohol and pedophiles at the workplace, and did not complete a security drill; (4) on February 4, 2020, a TSA employee gave pat-down instructions that were contrary to standard operating procedure; (5) on February 17, 2020, a TSA management official singled out and humiliated the Plaintiff, by directing her to leave a briefing; (6) on February 18, 2020, a TSA management official asked the Plaintiff if she had a hearing problem and asked her nonsensical questions; and (7) on February 19, 2020, a TSA management official made reference to Plaintiff's age in a sarcastic manner.  *Id.*

On August 7, 2020, the Plaintiff filed EEO Complaint No. 531-2021-00214X (Agency No. HS-TSA-01562-2020) alleging reprisal, sex, age, race and color discrimination claims, arising from a series of incidents that occurred between March and May of 2020.  ECF No. 59-1 at 13. Specifically, this Charge alleges that: (1) on March 4, 2020, TSA management did not respond to the Plaintiff's request not to work with a co-worker; (2) on March 8, 2020, TSA management issued the Plaintiff a LOR; (3) on March 9, 2020, TSA management denied the Plaintiff's request to change her fiscal year 2019 Transportation Officer Performance System ("TOPS") ratings, identified her as a male, refused to remove an expunged record from her fiscal year 2019

5

TOPS, and repeatedly had the wrong name; and (4) on May 13, 2020, a TSA manager yelled at the Plaintiff. *Id.*

The Plaintiff has filed past EEO complaints. *Id.* Notably, on September 16, 2020, TSA issued a notice of corrected acceptance identifying the Plaintiff's prior EEO activity as consisting of the following cases: HS-TSA-00717-2010, HS-TSA-00792-2018, HS-TSA-01324-2010, HS-TSA-01565-2011, HS-TSA-02531-2017, HS-TSA-02354-2007, HS-TSA-07245-2009, HS-TSA-21356-2012 and HS-TSA-23928-2015. *Id.* During Mr. Watson's deposition related to this case, he testified that he did not know that the Plaintiff had filed any EEO complaints until he received a request for mediation in 2020. *Id.* Mr. Watson also testified that he had no role or function with respect to Plaintiff's EEO complaints. *Id.*

<u>The August 10, 2020, Five-Day Suspension</u>

On June 1, 2020, Mr. Watson issued a Notice of Proposed Five-Day Suspension (the "Notice"), proposing to suspend Plaintiff from duty without pay for five calendar days to promote the efficiency of the service. *Id.* at 8. The Notice charged the Plaintiff with discourteous conduct based on two specifications. *Id.*

First, the Notice alleged that, on April 28, 2020, Supervisory Transportation Security Inspector Jil Thrash approached the Plaintiff at the airport to obtain her signature on the final grievance decision letter, and that during this interaction the Plaintiff repeatedly interrupted Ms. Thrash, spoke over her loudly, demanded information regarding her grievance, and walked away from Ms. Thrash while Ms. Thrash was still speaking. *Id.*

Second, the Notice alleged that, in an email dated April 30, 2020, the Plaintiff wrote to a National Resolution Center Regional Resolution Specialist in a manner that was dismissive and discourteous, instructing the specialist not to offer suggestions and not to contact her unless certain conditions were met. *Id.* And so, the Notice states that the Plaintiff's conduct violated TSA Management Directive 1100.73-5, which requires TSA employees to exercise courtesy and tact in dealing with fellow workers, supervisors, contract personnel, and the traveling public, even in the face of provocation. *Id.* at 9.

While the Plaintiff refused to sign the Notice acknowledging receipt, she submitted a written response to the Notice on June 14, 2020. *Id.* On June 23, 2020, the Plaintiff met with the Deputy Assistant Federal Security Director of Screening to provide a verbal response to the Notice. *Id.*

It is undisputed that TSA suspended the Plaintiff for five days, on August 10, 2020. *Id.* at 11. It is also undisputed that TSA's Deputy Assistant Federal Security Director of Screening, Sandra Heredia, served as the deciding official for the Plaintiff's suspension. *Id.* at 10.

### B.    Relevant Procedural Background

The Plaintiff commenced this civil action on April 22, 2023, and she amended the complaint on July 12, 2024. ECF Nos. 1 and 16. On July 12, 2024, the Court issued a memorandum opinion and Order granting-in-part the Defendant's motion to dismiss and dismissing Counts I, II, III and V of the amended complaint and dismissing Count IV of the amended complaint, with the exception of the Plaintiff's retaliation claim based upon her August 10, 2020, suspension. ECF No. 29 at 1.

On August 13, 2025, the Defendant filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56(a), and memorandum in support thereof. ECF No. 59 and 59-1.

On August 16, 2025, the Plaintiff filed a response in opposition to the Defendant's motion. ECF No. 60.

The Defendant filed a reply on September 19, 2025. ECF No. 61.

The Defendant's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III.   LEGAL STANDARDS

### A.    Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any

material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993). But a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322–23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

### B. Title VII Retaliation Claims

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. *See* 42 U.S.C. § 2000e. Title VII's anti-retaliation provision makes it unlawful "for an employer to discriminate against [an] . . . employee[] . . . because he has opposed any practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation . . . ." 42 U.S.C. § 2000e-3. And so, the Fourth Circuit has held that a Title VII plaintiff "may prove a Title VII retaliation claim either through direct evidence of retaliatory animus or via the application of the *McDonnell Douglas* burden-shifting framework." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (citation omitted). To that end, a Title VII plaintiff may prevail under the burden-shifting framework by showing that she: (1) "engaged in protected activity"; (2) "[her] employer took an adverse action against [her]"; and (3) that "a causal relationship exist[s]" between plaintiff's protected activity and the employer's adverse action. *See id.*

Under the *McDonnell Douglas* burden-shifting framework, if the plaintiff establishes a *prima facie* case of Title VII retaliation, the burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse action. *Cepada v. Bd. of Educ. of Balt.*

8

*Cnty.*, 974 F. Supp. 2d 772, 787 (D. Md. 2013). Then, the plaintiff must establish that the employer's reason for the adverse action was "mere pretext for retaliation" by proving "both that the reason was false and that discrimination was the real reason for the challenged conduct." *Id.* (emphasis in original).

To show that a plaintiff engaged in a "protected activity" under Title VII, a plaintiff must show that she was opposing an action that is an "unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a); *see DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (stating that "oppositional activity must be directed to an unlawful employment practice under Title VII"); *Ghumman v. Boeing Intel. & Analytics, Inc.*, 2025 WL 213971, at *3 (D. Md. Jan. 16, 2025) (stating that "the plaintiff must have complained about an action that discriminated on the basis of a protected class and thus violated Title VII"). The plaintiff must also show that she both "believed, in good faith" that she was "opposing intentional discrimination" prohibited by Title VII, and that her belief was "objectively reasonable." *Peters v. Jenney*, 327 F.3d 307, 323 (4th Cir. 2003); *Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 151 (D. Md. 2024).

With regards to the causal relationship element of a Title VII retaliation claim, a causal link is shown when the materially adverse employment action occurs shortly after the employee engages in protected activities. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). To prove causal relationship, a plaintiff must show evidence causally connecting her protected activity to an adverse employment action. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("[T]he employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity" (emphasis in original)). In this regard, this Court has held that a plaintiff must show that the "decision maker was aware of the protected activity at the time the alleged retaliation occurred." *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 281 (D. Md. 2023).

Lastly, if a Title VII plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Roberts*, 998 F.3d at 122 (citation omitted). While temporal proximity "may establish a *prima facie* case for retaliation," it does not, by itself, "rebut [a defendant's] legitimate, and uncontested, grounds" for its employment decisions. *Dziwulski v. Mayor & City Council of Balt.*, No. 18-277, 2020 WL 1034539, at *11 (D. Md. Mar. 3, 2020). And so, if the employer provides a legitimate non-retaliatory reason, "the burden shifts back to the plaintiff to rebut the

9

employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.*

## IV.  LEGAL ANALYSIS

The Defendant has moved for summary judgment on the Plaintiff's remaining retaliation claims in this case, upon the grounds that the undisputed material facts show that the Plaintiff cannot prevail on her retaliation claims, because: (1) the Plaintiff did not engage in any protected activity under Title VII; (2) the Plaintiff cannot establish a causal connection between any of her protected activities and the August 10, 2020, suspension; (3) the Plaintiff cannot show that the Defendant's legitimate, nondiscriminatory reasons for imposing the suspension were pretextual; and (4) the Plaintiff cannot prove any non-economic damages caused by the alleged retaliation. ECF No. 59 at 15–27.  And so, the Defendant requests that the Court enter judgment summarily in its favor on the Plaintiff's retaliation claims and dismiss this matter.  *Id.* at 27.

In her response in opposition to the Defendant's motion, the Plaintiff counters that summary judgment is not warranted in this case, because: (1) the record evidence contains multiple instances of protected activity, to support her retaliation claims; (2) a jury could reasonably conclude that TSA's managers had knowledge of her protected activity and that there is close temporal proximity between her protected activity and suspension; and (3) the record evidence contains sufficient evidence to show pretext to overcome the Defendant's stated reasons for the imposing the suspension.  ECF No. 60 at 2–9.  And so, the Plaintiff requests that the Court deny the Defendant's motion for summary judgment.

For the reasons that follow, the undisputed material facts in this case show that the Plaintiff did not engage in a protected activity within the meaning of Title VII by: (1) protesting and reporting a request to discuss her personnel and disciplinary records to Mr. Watson on April 28, 2020; (2) sending an email to Mr. Watson expressing a colleague's discomfort with working for Mr. Hetzler on May 28, 2020; (3) reporting statements made during the April 28, 2020, incident to Mr. Watson on June 1, 2020; and (4) reporting Mr. Hetzler's conduct with TSO Swartz to Mr. Watson on June 29, 2020.  The undisputed material facts also show that the Plaintiff cannot establish a causal connection between the filing of her two EEO complaints and the August 10, 2020, suspension, to establish a *prima facie* case of retaliation based upon these protected activities under Title VII.  And so, the Court: (1) GRANTS-in-PART the Defendant's motion for

10

summary judgment (ECF No. 59); (2) ENTERS JUDGMENT summarily in favor of the Defendant on the Plaintiff's retaliation claims; and (3) DISMISSES this matter.

### A. The Plaintiff Cannot Show That She Engaged In Protected Activity Beyond Her EEO Complaints

As an initial matter, the undisputed material facts in this case show that the Plaintiff did not engage in any protected activities under Title VII prior to the August 10, 2020, suspension, beyond the filing of her two EEO complaints.  To prevail on her Title VII retaliation claims, the Plaintiff must show, among other things, that she engaged in a "protected activity." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).  In this regard, the Fourth Circuit has held that, to show a "protected activity" under Title VII, the Plaintiff must show that she was opposing an action that is an "unlawful employment practice" under Title VII.  42 U.S.C. § 2000e–3(a); *see DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) ("[O]ppositional activity must be directed to an unlawful employment practice under Title VII[.]"); *Ghumman v. Boeing Intel. & Analytics, Inc.*, 2025 WL 213971, at *3 (D. Md. Jan. 16, 2025) (A plaintiff alleging violations of Title VII's anti-retaliation provision must have "complained about an action that discriminated on the basis of a protected class and thus violated Title VII.").  The Plaintiff must also show that she both "believed, in good faith" that she was "opposing intentional discrimination" prohibited by Title VII, and that her belief was "objectively reasonable." *Peters v. Jenney*, 327 F.3d 307, 323 (4th Cir. 2003); *see Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 151 (D. Md. 2024).

In this case, the Plaintiff alleges that she engaged in the following six protected activities under Title VII: (1) on April 28, 2020, the Plaintiff protested and reported her request to discuss her personnel and disciplinary records at her workstation to Mr. Watson; (2) on May 28, 2020, the Plaintiff sent an email to Mr. Watson expressing a colleague's discomfort with working for Mr. Hetzler, the Plaintiff's alleged first-level supervisor (ECF No. 16 at ¶ 8); (3) on June 1, 2020, the Plaintiff reported statements made during a April 28, 2020, incident at work to Mr. Watson; (4) on June 29, 2020, the Plaintiff reported Mr. Hetzler's alleged improper conduct towards a colleague, Ms. Swartz, to Mr. Watson; (5) on June 8, 2020, the Plaintiff filed a charge of discrimination with the EEOC; and (6) on August 7, 2020, the Plaintiff filed a second charge of discrimination with the EEOC.  ECF No. 59-1 at 11.  But the undisputed material facts make

clear that the Plaintiff did not engage in any protected activity, beyond the filing of her two EEO complaints, for several reasons.

First, the Plaintiff acknowledges that she did not engage in a protected activity on April 28, 2020.  During her deposition, the Plaintiff testified that "she did not make any 'protest' or 'report' to [] [Mr.] Watson on April 28 . . . ."  ECF No. 59-1 at 12; *see also* ECF No. 66-2 at 2 (Plaintiff's Answer to Interrogatory No. 17) ("I don't recall writing a statement to [Mr.] Watson on approximately April 28, 2020").  The Plaintiff does not dispute this testimony in her response in opposition to the Government's motion.  ECF No. 60-2 at 2–10.  And so, the Plaintiff cannot rely upon the alleged statements to Mr. Watson on April 28, 2020, to support her retaliation claims.

Second, the Plaintiff also appears to concede that she did not engage in any protected activity on June 1, 2020.  The Plaintiff alleges that she reported statements made during the April 28, 2020, incident to Mr. Watson on June 1, 2020, but the Plaintiff testified during her deposition that she did not make a report to Mr. Watson on June 1, 2020.  ECF No. 59-1 at 11; *see also* ECF No. 66-2 at 3 (Plaintiff's Answer to Interrogatory No. 18) ("I did not recall writing a statement on June 1, 2020.  What I recall is June 1, 2020[,] Watson handed me the proposed suspension dated 8-10-2020.").  The Plaintiff does not dispute this testimony in her response in opposition to the Government's motion.  *See generally* ECF No. 60-2 at 2–10.  And so, the Plaintiff also cannot rely upon the alleged statements to Mr. Watson on June 1, 2020, to support her retaliation claims.

Third, the undisputed material facts also show that the Plaintiff did not engage in a protected activity on May 28, 2020, when she expressed a colleague's discomfort with working for Mr. Hetzler.  To support this allegation, the Plaintiff points to an email that she sent to Mr. Watson regarding this concern.  ECF No. 16 at ¶ 29.  But, as the Defendant correctly observes, the contents of the email makes clear that the Plaintiff did not complain about an action that discriminated on the basis of a protected class and violated Title VII.  Notably, the subject email provides that:

> On May 20, 2020[,] at approximately 1245 hours at lower[-]level A during Atlas work hours. Katie Swartz TSO stated that she is uncomfortable with the other male Supervisor. I asked her if she meant Hetzler STSO? TSO Swartz responded [that] she thinks so. I asked if he had three stripes Swartz stated, yes. Swartz TSO stated that Ted made derogatory comments while working with her that

made her uncomfortable. Ryan LTSO asked Swartz TSO specifically what derogatory comments did STSO ma[d]e to her? Swartz made her uncomfortable. TSO stated Ted's comments just made her uncomfortable. Swartz stated she did not want to work with Ted STSO again. Swartz asked Ryan LTSO what days does Ted BTSO have off? Ryan LTSO sta[r]ted Friday thru Monday. Swartz stated those are her days off also. Nathan Lee TSO was present during this time. Please do not Retaliate against Swartz TSO for her report. I am assuming the correct person was identified as Ted.

ECF No. 59-1 at 19.  The Court agrees with the Defendant that there is no mention of discriminatory conduct in this email and that the email does not describe or explain how the colleague's discomfort with Mr. Hetzler implicates a protected characteristic under Title VII. ECF No. 59-1 at 19.  The Plaintiff rebuts by citing to the Plaintiff's response to an interrogatory in which she states, on "May 28, 2020, I complained to Darrin Watson regarding Swartz complaint of harassment against Hetzler and her request not to work with Hetzler."  ECF No. 60-1 at 3; ECF No. 66-4 at 7.  But again, the Defendant persuasively argues that there is no dispute on this issue by pointing to the Plaintiff's own deposition.  ECF No. 66-1 at 6 (Plaintiff Tr. at 23:22–24).  In the Plaintiff's deposition, the Plaintiff acknowledged that she was not sure this email described "any sort of discrimination based on a protected class."  *Id.*  Given this, the undisputed material facts show that the Plaintiff was not "opposing intentional discrimination of the sort" that Title VII prohibits in this email.  *See Peters*, 327 F.3d at 323.  And so, the Plaintiff also cannot rely upon her May 28, 2020, email to Mr. Watson to support her retaliation claims.

Lastly, the undisputed material facts also show that the Plaintiff did not engage in a protected activity when she allegedly reported Mr. Hetzler's conduct with Ms. Swartz to Mr. Watson on June 29, 2020.  The Plaintiff alleges in the amended complaint that she engaged in protected activity on June 29, 2020, when she reported Mr. Hetzler's conduct with Ms. Swartz to Mr. Watson.  ECF No. 16 at ¶ 33; ECF No. 59-1 at 11.  But the Plaintiff also alleges that she did not make a report to her supervisors on June 29, 2020, for fear of more retaliation.  ECF No. 59-1 at 11 n.5 (citing ECF No. 16 at ¶ 33 ("Plaintiff was afraid to report the June 29, 2020 incident for fear of more retaliation")).  The Plaintiff does not dispute the Government's contention that she did not make a report to her supervisors on June 29, 2020.  *See generally* ECF No. 60-2 at 2–10.

13

Given this, it is not clear that the Plaintiff made a report to Mr. Watson on June 29, 2020. And so, the Plaintiff cannot rely upon the alleged June 29, 2020, report to support her retaliation claims.

Because the Plaintiff cannot show that she engaged in a protected activity under Title VII with regards to the above alleged action, she cannot prevail on her retaliation claims based on these activities. And so, the Court GRANTS the Government's motion for summary judgment on the Plaintiff's retaliation claims based on these events. Fed. R. Civ. P. 56.

**B.    The Plaintiff Cannot Show A Causal Connection Between Her EEO Complaints And The August 10, 2020, Suspension**

Having determined that the Plaintiff did not engage in any protected activity under Title VII, beyond the filing of her two EEO complaints on June 8, 2020, and August 7, 2020, respectively, the Court next considers whether the Government is entitled to summary judgment on these remaining retaliation claims. It is uncontested that the Plaintiff's EEO complaints satisfy the first prong of a Title VII retaliation *prima facie* case. *See, e.g.*, ECF No. 59-1 at 15–20. But the Defendant argues that the Plaintiff cannot prevail on her retaliation claims based on this protected activity, because the undisputed material facts show that the Plaintiff cannot establish a causal connection between her EEO complaints and the August 10, 2020, suspension. For the reasons that follow, the Court agrees.

To prevail on her retaliation claims based on her EEO complaints, the Plaintiff must show, among other things, that a causal relationship exists between this protected activity and the employer's adverse action. *Roberts*, 998 F.3d at 122. A causal link is shown when the materially adverse action occurs shortly after the employee engages in protected activities. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). To prove a causal relationship here, the Plaintiff must advance evidence causally connecting her protected activity to an adverse action. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (stating that "the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity" (emphasis in original)). And so, this Court has held that a plaintiff must show that the "decision maker was aware of the protected activity at the time the alleged retaliation occurred" to show a causal connection. *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 281 (D. Md. 2023); *see also Dowe*, 145 F.3d at 657 . The Court has also held that, while temporal proximity "may establish a *prima facie* case for retaliation," it does not,

by itself, "rebut [a defendant's] legitimate, and uncontested, grounds" for its employment decisions. *Dziwulski v. Mayor & City Council of Balt.*, No. 18-277, 2020 WL 1034539, at *11 (D. Md. Mar. 3, 2020).

In this case, the undisputed material facts show that the Plaintiff cannot establish a causal connection between either of her EEO complaints and the August 10, 2020, suspension. In this regard it is undisputed that Ms. Heredia was the deciding official for the Plaintiff's five-day suspension. ECF No. 59-1 at 9. It is also undisputed that the Plaintiff filed an EEO complaint on August 7, 2020. *See, e.g.*, ECF No. 59-1 at 21. And so, the undisputed material facts also show a close temporal proximity between the Plaintiff's August 7, 2020, EEO complaint and her suspension just a few days later on August 10, 2020.

But the Plaintiff points to no evidence to show that Ms. Heredia was aware of her August 7, 2020, EEO complaint when Ms. Heredia decided to suspend the Plaintiff. In fact, the Plaintiff testified during her deposition that she did not know whether Ms. Heredia was aware of her EEO complaint. ECF No. 66-1 at 19 (Plaintiff Tr. at 76:22–23; 77:1–11) ("Q. How do you know that the decision maker for the suspension even had knowledge of the [August 7th] EEO? . . . A. The EEO process starts with informal well before [August 7]. And you think the decision maker for the August [10th] suspension was aware of the informal EEO process[]. A. Oh, I don't know if they're aware of the . . . process or not.").

While the Plaintiff may believe that Ms. Heredia was aware of her EEO activity, that belief is not sufficient to establish a causal connection between the August 7, 2020, EEO complaint and her August 10, 2020, suspension. Absent evidence to show this connection, the Plaintiff cannot prevail on her retaliation claim based upon her August 7, 2020, complaint. *Dziwulski*, 2020 WL 1034539, at *11. Given this, the Court agrees with the Defendant that the Plaintiff cannot prevail on her retaliation claim based upon the August 7, 2020, EEO complaint. And so, the Defendant is entitled to summary judgment on this final retaliation claim. Fed. R. Civ. P. 56.

The Plaintiff's retaliation claim based upon her June 8, 2020, EEO complaint is also problematic. It is undisputed that the Plaintiff filed an EEO complaint on June 8, 2020. ECF No. 66-4 at 7 (Plaintiff's Answer to Interrogatory No. 12) (stating that on "June 8, 2020, I filed formal Equal Employment Opportunity complaint (HSTSA-01330- 2020)"). As discussed above, it is also undisputed that the Plaintiff was suspended on August 10, 2020. ECF No. 59-1

15

at 11.  And so, there is no dispute that the Plaintiff's suspension occurred approximately two months after she engaged in this protected activity.

But the undisputed material facts also show that the Plaintiff cannot establish a causal connection between this EEO activity and her August 10, 2020, suspension, because TSA commenced the disciplinary process that resulted in her suspension before the Plaintiff engaged in this protected activity.  In this regard, the undisputed material facts show that Mr. Watson issued a Notice of Proposed Five-Day Suspension, proposing to suspend Plaintiff from duty without pay for five calendar days to promote the efficiency of the service, on June 1, 2020.  *Id.* at 8.  The undisputed material facts also show that the reason for the proposed suspension was the Plaintiff's discourteous conduct on April 28, 2020.  *Id.*

In addition, the unrebutted evidence shows that the TSA initiated the disciplinary process that led the Plaintiff's August 10, 2020, suspension months earlier, on March 8, 2020.  *Id.* at 23 (citing Plaintiff Tr. at 77:21–25).  The Fourth Circuit has held that, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006).  The Court finds such circumstances are presented here with regard to the Plaintiff's suspension.

Given this, the Plaintiff cannot show that there is a causal connection between her five-day suspension and her EEO activity on June 8, 2020.[3]  And so, the Government is also entitled to summary judgment on this final retaliation claim.  Fed. R. Civ. P. 56.

Because the Court concludes that the undisputed material facts in this case show that the Plaintiff cannot establish a *prima facie* case of retaliation under Title VII, the Court does not reach the remaining issues raised in the Defendant's motion for summary judgment.

## V.   CONCLUSION

In light of the foregoing, the Court:

   (1) **GRANTS-in-PART** the Defendant's motion for summary judgment (ECF No. 59);

---

[3] The Court declines to consider the Plaintiff's prior EEO activity since 2007 as a basis for causation for her August 10, 2020, suspension.  The Court in its prior ruling narrowed the scope of protected activities with respect to the Plaintiff's EEO complaints to the June 8, 2020, and August 7, 2020, complaints.  ECF Nos. 29 and 30.

(2) **ENTERS JUDGMENT** summarily in favor of the Defendant on the

Plaintiff's retaliation claims; and

(3) **DISMISSES** this matter.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

17